BUCK *v.* BUCK.

1. DIVORCE—EXTREME CRUELTY—EVIDENCE.

Decree for plaintiff husband on ground of extreme cruelty *held*, correct on evidence presented, hence it is unnecessary to determine whether or not the trial court should have allowed plaintiff to testify as to acts of cruelty.

2. SAME—EXTREME CRUELTY—ADULTERY—EVIDENCE.

Plaintiff husband who sought divorce on ground of extreme cruelty and adultery and who obtained decree on ground of extreme cruelty was not aggrieved by the refusal of the trial court to allow him to testify since statute barred his testimony as to adultery of wife and other ground was otherwise established (3 Comp. Laws 1929, § 14221).

3. SAME—ADULTERY—TESTIMONY OF CHILDREN.

Refusal of trial court to permit 14-year-old son of parties to testify as to acts of adultery claimed to have been committed by defendant wife when boy was 8 or 9 years old *held*, not error.

4. SAME—ADULTERY—UNCORROBORATED TESTIMONY OF CHILDREN.

The Supreme Court is loath to sustain a decree of divorce on the ground of adultery based on the uncorroborated testimony of a young child of the parties as to what had taken place some five years theretofore when the child was but 8 or 9 years of age.

5. SAME—CHILDREN AS WITNESSES.

Counsel for a party to a suit for divorce should refrain from calling children of the parties as witnesses, if possible.

6. SAME—DE NOVO HEARING.

A suit for divorce, being a chancery case, is heard *de novo*.

7. SAME—HATRED—ANIMUS.

To grant a divorce solely because there was too much hatred and animus between the parties and because it is apparent they would never live together again would be error.

8. SAME—DIVISION OF PROPERTY.

Where plaintiff husband in suit for divorce had net assets of at least $7,136.20 and defendant wife had worked hard in build-

ing up the filling station and store property, award to her of
$3,000 to be payable in 90 days was not error.

9. SAME—CUSTODY OF CHILDREN—VISITATION. .
   An order of custody as to children and the matter of visitation
   of the other parent are always subject to change upon proper
   motion and proofs.

10. SAME—CUSTODY OF CHILDREN.
    Order awarding custody of girl, now seven years old, to mother
    together with $15 a week for the child's support *held,* proper,
    where child has been in mother's custody for 18 months,
    mother's recent conduct has been exemplary and child, lodged
    with her maternal grandmother, is being well cared for, both
    morally and physically, and surroundings afforded by father
    unfit for a young girl, since the good of the child is paramount
    to everything else.

11. SAME—COSTS.
    No costs, except $100 counsel fee to wife's counsel, are allowed
    upon affirmance of decree for husband, where he appealed.

Appeal from Jackson; Simpson (John), J. Submitted January 9, 1948. (Docket No. 51, Calendar No. 43,837.) Decided April 5, 1948.

Bill by John H. Buck against Margaret Buck for divorce on ground of adultery and extreme and repeated cruelty. Cross bill by defendant against plaintiff for divorce on ground of extreme cruelty. Decree for plaintiff. Plaintiff appeals. Affirmed.

*Wilson & O'Brien,* and *John P. O'Brien,* for plaintiff.

*H. A. Kinch,* for defendant.

BUTZEL, J. Plaintiff, John H. Buck, sought a divorce from defendant, Margaret Buck, on the grounds of adultery and extreme cruelty. Defendant denied the charges and filed a cross bill alleging extreme cruelty. The parties were married on

June 14, 1925. They have two children, a boy born January 31, 1933, and a girl born February 8, 1941. The court below, after a full hearing, awarded plaintiff a divorce on grounds of extreme cruelty. He awarded custody of the boy to plaintiff and custody of the girl to defendant. The decree provided for a property settlement whereunder plaintiff was ordered to pay defendant $3,000 within 90 days from the entry of the decree, and, also, to pay the sum of $15 a week for the support of the little girl. It awarded no alimony for the support of defendant. The trial court found that there was no evidence supporting the charge of adultery.

Plaintiff appeals from this decree, asking its vacation and the granting of a new hearing. He contends that the trial court erred in refusing to allow either of the parties to testify as to the charge of cruelty, and in not permitting the son of the parties, 14 years of age at the time of the hearing, to testify as to the charge of adultery. Plaintiff further claims that the trial court erred in finding that there was no evidence of adultery. Defendant did not cross appeal.

The main portion of plaintiff's bill of complaint is devoted to charges of adultery. Except in one instance, which was not proven, the time, place and circumstances of the alleged adultery are not set forth with any degree of particularity in the bill of complaint. When plaintiff sought to testify, the trial court refused to allow him to do so because adultery was charged in the bill of complaint. The same ruling was made when defendant was called by plaintiff for cross-examination. The trial judge based his ruling on 3 Comp. Laws 1929, § 14221 (Stat. Ann. § 27.916), which reads as follows:

"A husband shall not be examined as a witness for or against his wife without her consent; nor a

wife for or against her husband without his consent, except in suits for divorce   *   *   *   but in any action or proceeding instituted by the husband or wife, in consequence of adultery, the husband and wife shall not be competent to testify.''

Plaintiff contends that the statute only precludes him from testifying as to the charge of adultery, and that he should have been permitted to testify as to other matters in issue in the case. It is not claimed that either plaintiff or defendant should have been allowed to testify with regard to the charge of adultery. We fail to see how plaintiff has been aggrieved by the refusal of the trial court to allow him to testify. Plaintiff's charges of extreme cruelty were found by the trial court to be proved in the decree. A careful reading of the record leads us to the conclusion that the decree is correct. At most, plaintiff's testimony could do no more than augment the evidence on the charge of cruelty, and could not, under the circumstances, affect the result which was reached. We, therefore, find it unnecessary to decide whether plaintiff should have been allowed to testify as to acts of cruelty. Plaintiff's attorney contends that it might have become necessary for plaintiff to testify as to jurisdictional facts in that an admission in the pleadings as to such facts is not sufficient to confer jurisdiction upon the court under the ruling in *Smith* v. *Foto,* 285 Mich. 361 (120 A. L. R. 801). However, jurisdiction was amply proved by the facts disclosed by other witnesses, and there is, therefore, no reason to discuss the question in the instant case.

The trial court also refused to allow the 14-year-old son of the parties to testify as to acts of adultery claimed to have been committed by defendant in 1941, at which time the boy was only 8 or 9 years of age. Under the circumstances of this case,

plaintiff has no reason to complain of this ruling. No other evidence was presented by him to prove the acts of adultery. We have held that a divorce on grounds of adultery may not be awarded when no evidence to support the charge is offered other than the testimony of the young children of the parties. *Kneale* v. *Kneale,* 28 Mich. 344; *Crowner* v. *Crowner,* 44 Mich. 180 (38 Am. Rep. 245). In the *Kneale Case,* we said:

"The evidence relied upon to prove adultery is mainly circumstantial, except what is given by the children of the parties, who are called to testify to the adulterous conduct of their mother, witnessed by them at an age when they could scarcely be supposed able to understand the significance of facts sworn to. Leaving out this evidence, the case would not be established; and we think it exceedingly unsafe to grant a divorce on the testimony of such children, and are not disposed to encourage a practice of such evil tendency as the calling them as witnesses against their mother for such a purpose, and at such an age."

The same reasoning applies to the instant case. Even if the trial judge had allowed the boy to testify, we would be loath to sustain a decree of divorce on grounds of adultery which is based upon the uncorroborated testimony of a young child of the parties as to what took place some five years before the hearing and when he was not yet in his teens.

The practice of calling children of the parties as witnesses in a divorce action has been repeatedly disapproved by this Court. Counsel, if possible, should refrain from doing so. It is bad from a social viewpoint though not legally forbidden. *Radzinski* v. *Radzinski,* 234 Mich. 144; *Ames* v. *Ames,* 231 Mich. 347. In view of all the circumstances, the

judge was not willing to brand the defendant as guilty of adultery in the absence of positive proof. The boy is devoted to his father and in his over anxiety to testify against his mother persisted in giving testimony against her after he was ordered by the court to desist. His recalling indecencies that occurred years before when he was still a young lad is shocking and difficult to believe. The trial judge made the following statement in his opinion:

"In the opinion of the court, there is no evidence of adultery. Practically all of the testimony of the plaintiff was that of young boys that he has allowed to congregate about this filling station, and, in the opinion of the court, he has made a rendezvous of a questionable character for these young lads. * * * Most all of the testimony of these young boys and girls occurred when they were somewhere in the neighborhood of 10 to 12 years of age, and they did not make a very good impression upon the court."

We hear a chancery case *de novo,* and even if the judge erred in some of his rulings, as, for example, in stating that he granted the divorce solely because there was too much hatred and animus between the parties and it was apparent they would never live together again, we feel that he reached a correct result.

The principal question which plaintiff has raised, although not stated in his brief in exactly the same form in the statement of questions involved, is whether the property settlement was fair to plaintiff and whether the custody of the little girl should have been given to defendant. Plaintiff complains that at the close of the proofs the court announced that it would appoint a real estate dealer to appraise the plaintiff's property. Such an appraiser was not appointed. Plaintiff himself offered the testimony

of an accountant who audited the books of the plaintiff's filling station and grocery store business over a period of several years. He testified that at the time of the trial the plaintiff had current assets amounting to $1,733.46, and that the value of the building including cabins on the property was $6,000. He further testified that the plaintiff had current liabilities of $597.26, leaving net assets of $7,136.20. It is not clear whether the value of the vacant land upon which the buildings stand is included in this statement of assets. This property was purchased on land contract by plaintiff and defendant jointly for $2,250, payments being made over a period of 12 or 13 years. The vendor in this contract testified that he visited the property about once a week during that period, and that he had observed Mrs. Buck assisting in the business and working in the filling station and store. When the deed was given, it was made out to plaintiff alone. The testimony seems quite conclusive that defendant worked hard in building up the property, that originally she was entitled to a joint deed upon the contract being paid up, and that she had an interest in the property. Using the figures offered by plaintiff as to his financial condition, we believe that the court did not err in awarding defendant $3,000 and in giving plaintiff 90 days in which to pay such sum. He accepted plaintiff's own figures, and did not require the findings of an appraiser.

The little girl has been in the custody of the mother for at least 18 months prior to the hearing. Defendant has been making $15 a week by tending the children of a school teacher at the latter's home while the teacher is away. The little girl is being kept at the home of defendant's mother, where she is being well cared for, both morally and physically. Witnesses testified as to the good character of de-

fendant and her exemplary behavior during a period of over 18 months prior to the hearing. Unquestionably plaintiff has been a hard-working and industrious man. He worked at a nearby factory, while defendant looked after the home and the business. However, testimony was introduced to show that plaintiff's filling station and store are an unfit place in which to bring up a little girl. The judge so found. Rough talk was used about the premises, drunkenness did exist there, beer was sold to be taken off the premises, but, according to testimony, it was consumed on or near the premises. The custody of young children, particularly of little girls, always presents a difficult question. However, the good of the child is paramount to everything else, and the conscientious judge stated that it was his first consideration. The order of custody and the frequency and length of time the father can visit the little girl or have her with him are always subject to change upon proper motion and proofs. However, if the mother continues to conduct herself in the manner as she has during a long period prior to the hearing, there will not be any occasion to make any change as to the custody of the child.

We affirm the decree of the trial judge, but without costs except the $100 fee the trial judge awarded defendant's counsel.

BUSHNELL, C. J., and SHARPE, BOYLES, REID, NORTH, DETHMERS, and CARR, JJ., concurred.