TERBUSH v. TERBUSH.

1. DIVORCE—CUSTODY OF CHILDREN—MODIFICATION OF DECREE.
   Order modifying decree of divorce so as to award custody of children, now 8 and 6 years of age, to father on his petition because of mother's frequent and prolonged absence from home she had rented, is reversed, where there is no showing of wife's unfitness to have their custody, her mother has given them good care in the wife's home, father has shown little concern for the children before and after the divorce and proposed to have his own mother care for them (CL 1948, § 722.541).

2. SAME—CUSTODY OF CHILDREN.
   The good of the children, involved in a suit for divorce, is the paramount consideration in awarding custody.

3. SAME—MOTHER'S CUSTODY OF YOUNG CHILDREN.
   A strong showing is necessary before young children will be taken from their mother in a suit for divorce, since they need a mother's care (CL 1948, § 722.541).

4. SAME—REMOVAL OF CHILDREN FROM JURISDICTION—INJUNCTION.
   Injunction preventing removal of children from jurisdiction of court by modification awarding their custody to father, not having been superseded by any order of the court, remains in full force and effect upon reversal of order of modification.

---

REFERENCES FOR POINTS IN HEADNOTES
[1–3] 17 Am Jur, Divorce and Separation, §§ 683, 684.

Appeal from Lapeer; DesJardins (George W.), J. Submitted October 10, 1950. (Docket No. 51, Calendar No. 44,857.) Decided December 5, 1950.

Divorce proceeding between Virginia E. Terbush and Alton G. Terbush. On petition of defendant for amendment of decree. Decree amended to provide that defendant have custody of children. Plaintiff appeals. Reversed.

*Isabel D. Hannah,* for plaintiff.

*Jack F. Smith,* for defendant.

BUTZEL, J. This is an appeal from an order modifying the provisions of a divorce decree in regard to the custody of 2 minor children. Virginia Terbush brought a bill for divorce against Alton G. Terbush on October 13, 1947. There had been 3 or more similar actions started, but the parties had become reconciled and the actions were discontinued. A cross bill was filed, and at the hearing it was agreed that the contest was primarily over the question of the custody of the children. On May 3, 1948, the court granted a divorce to the wife and awarded her the custody of the 2 children, Nannette, 6, and Daniel, age 5. As the testimony in the divorce proceeding has been made part of the record in this case, we refer to it briefly.

While there was testimony on the part of the husband that his wife was neglectful of the children at times, we believe that the trial judge was correct when he stated in his opinion in the divorce case:

"Now there has been instances of what has been claimed the neglect of these children. There has not been a thing testified to that any person, over a period of years, could see and speak of, and there is nothing here in the opinion of this court ap-

proaches such neglect or cruelty as to indict this mother."

Mrs. Terbush kept the children clean and well dressed, sent them to school regularly and took them to church every Sunday. She was the superintendent of the Sunday school of the local Methodist church. She had none of the bad habits that so often lead to divorce.

The husband was a hard working man who had a regular job in a factory and had missed but a dozen days of work in the 12 years he had been employed there when work was available. He supported his family, maintained his home, and during the week was a good husband. However, on week ends he drank to excess. At times he became violent and struck his wife and he habitually resorted to vile and abusive language while intoxicated. He refused to attend church with his wife but, except when drinking, no serious fault could be found with his conduct.

The court in the opinion blamed both parties for the divorce. It said that neither could have been too bad or there would not have been the numerous reconciliations of the past. The wife was given custody of the children, there was a property settlement, and visitation privileges. The court said:

"We will make a provision of $15 a week and you buy the clothes and take care of medical expense; that medical expense will be what you approve. I am trying to fix it so you will have a personal part in these children. The children have got to eat and there is no cessation in living expenses, none whatever. At that rate Virginia, you will have to go to work, she can't support these 2 children and herself on $15 a week, and we don't want any adverse criticism if she goes to work."

Two months after the decree of divorce on July 9, 1948, a hearing was had on a petition asking that the

wife be restrained from removing the children from the jurisdiction. The wife had intended to take a medical technician's course in Chicago, and had planned that she and the children would live there in her brother's home. There was no controversy at the hearing as the wife had no intention of violating the terms of the divorce decree pertaining to visitation but was merely seeking to obtain more gainful employment. An order was agreed to between the parties and by its terms the plaintiff was restrained from removing the children from the State in such manner as to infringe upon the privileges of the husband.

On May 21, 1949, a petition was filed by the husband asking that the decree of divorce be modified and that he be given custody of the children. On September 20, 1949, an order was issued, without opinion, modifying the decree and awarding custody of the children to the father. It is from this order that the present appeal has been taken.

When Virginia Terbush left her husband in April of 1948, she began working in the Mayville Hospital and kept this position until November of that year. During that time the children lived with their mother in an apartment. In November, Virginia rented a house in Mayville. Her salary at the hospital was not sufficient to maintain herself and her children and she began looking for other employment. She took a job with a book concern, working out of Ann Arbor, and stayed with the concern for 2 months. She worked about half of the time and spent the rest of her time in Mayville with the children. While she was working she sent home part of her salary to help maintain the household. In January, she took a job with the college book exchange at Drury College in Springfield, Missouri, which she held for 2 months with the exception of a 3-week period in February when she was home with her children. On March

15th, she obtained a job as medical assistant to one Dr. Flaherty at a clinic in Cartersville, Missouri, at $25 a week and room and board, but she did not start work there until May and remained at it for 2 weeks. It is at this point in time that the husband's petition was filed and Mrs. Terbush came home. At the hearing Mrs. Terbush testified that she and Dr. Flaherty were engaged to be married but said that if it meant giving up her children she would quit her work in Missouri, give up whatever hopes she had and come home. Evidence was introduced that Dr. Flaherty was married at the time that Virginia worked for him and a deposition was introduced in which Dr. Flaherty testified:

"*Q.* Were you engaged to Virginia Terbush?
"*A.* That is my business.   *   *   *
"*Q.* If Virginia has testified that she was planning to marry you last June, would you say she was mistaken?
"*A.* I can't answer that. I absolutely have no control over other people's emotions."

Dr. Flaherty's reticence was understandable since he had a petition for the cancellation of a previous marriage or in the alternative for a divorce pending in the Missouri courts.

While Virginia Terbush was out of the city, her mother, a woman of 60, cared for the children and for the house that Mrs. Terbush had rented. Alton Terbush admitted in his testimony that Mrs. Lamoreaux, Virginia's mother, had done a "swell job" and that he had little complaint, but he contended that taking care of the children was too much of a burden for a woman of Mrs. Lamoreaux's age. She did not complain.

The husband also contended that the children should have the benefit of at least one parent's companionship, and since the mother had been away

much of the time, he should have custody of the children. The mother's difficulties arose from her struggle to support herself and her children, and aside from the fact that she had been away much of the time, there was no suggestion in the record that she was an improper person to raise the children. The husband's conduct, on the other hand, has been anything but exemplary.

While his wife was away he visited the children infrequently, and on 2 occasions, when he had made arrangements to take them out, he never came. The children had looked forward to these visits and the upstairs tenant testified that she saw the children crying because of their disappointment. As the court said during the hearing:

"The children are the concern of the court, and I am not content with the action of either party. What my decision may be I don't know, but I have little sympathy for either parent. I have very little sympathy for their attitude toward these children during the entire proceedings, from the very inception of the case up until now, and *as far as the father is concerned his conduct is reprehensible.* (Italics supplied.) This divorce never would have occurred except for his excessive drinking. I will not express an opinion now, but when a man lives right in the community and his children have pneumonia and he doesn't discover it, you can make 60 or 70 dollars a week and never go near those children for a month at a time, and blow the horn outside of the house for children 6 and 8 years."

The husband proposed that the children would stay with his mother. There is no record as to her age except that she had 32 grandchildren and, therefore, cannot be much younger, if not older, than Mrs. Lamoreaux, the wife's mother.

We always give considerable weight to the judgment of the trial court. However, on the record as

presented to us, we believe that the court should not have disturbed his former decree.

It would be extreme cruelty to take the children away from their mother, and give them to a father who has shown so little concern for them, both before and after the divorce.

The good of the children is paramount. *Buck* v. *Buck,* 320 Mich 624 (2 ALR2d 1325); *Riede* v. *Riede,* 300 Mich 300. Children need a mother's care, and a strong showing is necessary before they will be taken from her. In *Epstein* v. *Epstein,* 234 Mich 200, we said:

"It is only when the mother is not of good moral character, or where conditions exist in her home that make it an unfit place for the child, that the court will ignore the provision of the statute and give the father the custody of children under the age of 12 years."

This is in keeping with the legislature's express intention to give the custody of minor children to their mother. CL 1948, § 722.541 (Stat Ann § 25.311).

The injunction, which prevents the removal of the children from the jurisdiction of the court until its further order, has not been superseded, and remains in full force and effect. While the children remain in the jurisdiction, both the father and the friend of the court, through whom the weekly payments are made, will be able to keep in touch with the situation, and should a sufficient change in circumstances arise to warrant a change in custody, the court may be petitioned for a modification of the decree.

The order of September 20, 1949, modifying the original decree will be vacated, and the original de-

cree will be reinstated, with costs of this appeal awarded to the appellant.

BOYLES, C. J., and REID, NORTH, DETHMERS, CARR, BUSHNELL, and SHARPE, JJ., concurred.