Argued September 7, affirmed November 7, 1962

# GONYEA *v.* GONYEA

375 P. 2d 808

*Thomas E. Brownhill,* Eugene, argued the cause for appellant. On the brief were Riddlesbarger, Pederson, Brownhill & Ingerson, Eugene.

*Edwin E. Allen,* Eugene, argued the cause for respondent. On the brief were Bartle & Allen, Eugene.

Before McAllister, Chief Justice, and Rossman, Perry, Goodwin and Denecke, Justices.

ROSSMAN, J.

This is an appeal by the defendant, Wilford H. Gonyea, from an order of the circuit court which modified the provisions of a decree of divorce and child custody entered on December 2, 1960. The modification pertained to the custody of the children and not to the divorce. Plaintiff and defendant had two children, Douglas and Lynn Marie, whose ages at the time the decree was entered were respectively 9 years and 9 months, and 6 years and 10 months. Stated in general terms the decree awarded (1) the plaintiff custody of the children during the school months, (2) the defendant custody during the summer months, and (3) visitation privileges on alternate weekends to the party who did not then have custody.

On April 13, 1961, plaintiff moved that the decree of December 2, 1960, be modified in several particulars thereby precipitating the issue before us. The motion was granted in one particular only; that is, it modified the decree so that the visitation privileges of the party not having custody, which were formerly allowed on alternate weekends, were limited to one weekend per month. The defendant challenges that modification on appeal. No other part of the order or decree is attacked on appeal.

In cases such as this it is the duty of the court to consider as paramount the welfare of the children. *Gallagher v. Gallagher,* 187 Or 625, 212 P2d 746 (1949), *Goldson v. Goldson,* 192 Or 611, 236 P2d 314 (1951). All other considerations are secondary.

In attacking the order of the circuit court modifying the decree, the defendant presents the following as his first assignment of error:

"That there was a failure of proof of a change of conditions which would support a modification of the decree as to visitation."

■ In *Wells v. Wells-Crawford,* 120 Or 557, 251 P 263, 251 P 907 (1927), this court said:

"The modification of a decree, for the care and custody of a minor child of divorced parents, must be based on some change in the circumstances relating thereto and occurring since the rendition of the original decree, or upon some fact not known at the time of such decree. * * *

"In order to warrant the court in modifying a decree for the care and custody of such minor child, it should be shown that such modification would enhance the welfare of the child, or that the change in circumstances * * * has been such as injuriously affected the child. * * *"

See also *Henrickson v. Henrickson,* 225 Or 398, 358 P2d 507 (1961); and *Kellogg v. Kellogg,* 187 Or 617, 213 P2d 172 (1949). Therefore, in order to sustain the modification in the case at bar which was granted by the challenged order it is essential that the plaintiff point to evidence which shows a change in the circumstances which occurred since the decree was rendered, or, in the alternative, to the existence of some material fact which was unknown at the time of the decree.

The uncontradicted testimony of the plaintiff established that the defendant's frequent visits adversely affected the children in a number of ways. An excerpt from her testimony follows:

"* * * They would come back on Sunday. They would usually get home about 6:00 o'clock, some-

times it was later when for some reason he couldn't get them back, and they would be completely worn out. Sometimes they would have dinner; sometimes they wouldn't. * * * It would take sometimes one or two days for them to be able to get back in their routine, but they would always seem very, very tired, or sometimes when goodbyes were prolonged too long, there were tears. Everybody was upset.

"Q In what manner did this also tend to affect them in school, in regard to the work they were supposed to be doing?

"A Well, as I said, it would take them a day or two to get back into the routine and get settled down where I thought they were in physical condition or emotional condition to do the type of work that they should at school."

The evidence indicates that the trips away from home (Goshen) tended to disrupt participation by the children in social and athletic events which took place on weekends. They also rendered impossible the use of the weekend as a time for music lessons. The defendant, upon obtaining the children, took them to places such as Portland and San Francisco. Frequently the trips were made by airplane. Upon reaching Portland and San Francisco the children were taken to hotels. Disciplinary problems were materially increased as a result of the visits.

Undoubtedly some of these consequences could have been foreseen prior to the rendition of the decree. But one could not reasonably expect the parties to know in advance the emotional impact which the frequent visits would have upon the children. Nor could one expect them to have predicted accurately the degree to which the discipline of the children would be impaired. If this experience was not an entirely new one to the parties, it was at least an unfamiliar one.

It is to be expected that they would fail to anticipate some factors which a person of experience in such matters would foresee. It would be unjust to sacrifice the welfare of the children because the parties were mistaken in their planning for them. We are of the opinion that the mere putting into operation of a decree may in some cases qualify as a change of circumstances.

■ Defendant's argument implies that even if it be conceded that there was a change of circumstances, it was not of sufficient importance to justify the modification under scrutiny. There is no constant or standard quantity of change which will qualify. The amount of change necessary to justify a modification of a decree varies with the facts of the individual case. *Goldson v. Goldson,* supra, said:

> "* * * Keeping in mind the principal considerations in all such applications for modification, that is, the best interests of the child, there might be some changes in conditions of a substantial character that would not warrant modification, while in other situations very slight changes might be deemed sufficient."

Clearly the amount of change in the circumstances is only one of several factors which a court must consider in deciding whether to modify a decree. As we have already stated, pre-eminence is given to the interests of the children.

■ In the case before us the trial judge, who had opportunity to observe the demeanor and manner of the witnesses, found that the welfare of the children required that the visits by the party not having custody be curtailed. The question is one of fact. This court has many times stated that it will not disturb

the decree of the trial judge as to the custody of the children if the question is one of fact and the evidence is sufficient to warrant the attacked ruling. *Henry v. Henry,* 156 Or 679, 69 P2d 280 (1937); *Kloster v. Kloster,* 187 Or 683, 213 P2d 448 (1950). Since this was the first exposure of the children to the situation which we have described, it was extremely difficult, if not impossible, to know in advance how they would react to it. It was discovered that they reacted unfavorably. Their school activities suffered. They were often emotionally upset—much more frequently than before. It became increasingly difficult to discipline them. Since we, as well as the parties, are now aware of the adverse reaction of the children to the program, the policy of promoting the best interests of the children dictates that a change be made. We are satisfied that the trial judge had before him evidence sufficient to warrant limiting the visits to once each month. Hence, we will not disturb that finding. The first assignment of error is without merit.

The second assignment of error contends that "The Court erred in refusing to permit Defendant's son, Douglas, to testify when called as a witness by Defendant." The tragic nature of divorce is vividly portrayed when young children are drawn into the proceedings as witnesses to take sides against one or the other of their parents, both of whom they should dearly love. Our disapproval of that practice was registered in *Kreutzer v. Kreutzer,* 226 Or 158, 359 P2d 536 (1961) in the following language:

"* * * we share the view of the circuit judge that in a case of this kind, young children of the parties should not be forced to become witnesses * * *. This practice has been frowned upon by

374

other courts. Thus it was said in Buck v. Buck, 320 Mich 624, 31 NW2d 829, 2 ALR2d 1325:

" 'The practice of calling children of the parties as witnesses in a divorce action, has been repeatedly disapproved by this court. Counsel, if possible, should refrain from doing so. It is bad from a social viewpoint though it is not legally forbidden. * * *' "

See also, *Gallagher v. Gallagher,* supra. But, as was pointed out in the Kreutzer case, we are not at liberty to change the rules set forth by the legislature prescribing who may be a witness. According to ORS 44.020 and 44.030, Douglas, who had become ten years of age when the defendant wished to call him to the witness stand, was a competent witness. The trial court's refusal to hear his testimony was error.

■ But error does not, of itself, require reversal. ORS 19.125 (2) states:

"No judgment shall be reversed or modified except for errors substantially affecting the rights of the parties."

*Baden v. Sunset Fuel Co.,* 225 Or. 116, 357 P2d 410 (1960), states:

"* * * It is a familiar precept that not every error entitles a litigant to a new trial but only error which has resulted in prejudice to him. * * *"

In the case at bar the defendant has viewed with his own eyes the ruin of his matrimonial venture which some years ago was ushered in with vows of love and honor that were exchanged amid the fragrance of sweet flowers and bright prospects of happiness. Love and honor have now vanished from the family hearth and in their stead we find hatred, bitterness and even the presence of detectives. In recent months when husband and wife conferred each brought along an attorney.

Some time ago they consulted a Portland marriage counselor, but to no avail. The evidence describes a short meeting between husband and wife at a place in California renowned for its exquisite charm; but in the course of which cruel profane words were hurled about while a guard lurked in the background prepared to prevent physical violence. Upon another occasion the plaintiff gave to the defendant a marriage band, hoping that it would recapture in his mind memories of bygone felicity, but it developed shortly that this tender symbol of love was destined, like the marriage itself, for an ignominous discard when something of a more alluring nature offered itself.

The boy has now passed his tenth birthday, and the law deems him a competent witness. The defendant proposes to summon him into the courtroom and have him cross the threshhold of this unsavory divorce suit. So far, the two children have not been participants in the embroilments in which husband and wife are engrossed. Now it is proposed that the boy, by becoming a witness, should choose sides. It surely would be most regrettable if that has to take place. We do not believe that it need take place. We do not know what the boy would have said had he been sworn. Possibly he would have declined to attend the trial.

We are aware that there are cases where the testimony of children is a necessary evil. Thus, where facts material to the issues, the existence of which may be objectively determined, are in dispute, a child's testimony may be essential to establish a fact: *State of Oregon v. Doud,* 190 Or 218, 225 P2d 400. Another example of such a case is *Bole v. Bole,* 76 Cal App 2d 344, 172 P2d 936 (1946) in which the principal testimony at the trial concerned what had occurred at a party. Plaintiff introduced evidence tending to show

that the defendant was drunk and quarrelsome on that occasion. Defendant denied the accusations and attempted to call his young son, who was present at the party. The trial court refused to require the boy to testify. Its ruling was deemed error by the appellate court. Clearly, in such a situation the boy's testimony was essential to the issues involved. Further, the facts in dispute could be objectively determined even by a child who was at the party. In *Kreutzer v. Kreutzer,* supra, cited by the defendant, this court clearly states that there was a dispute as to the facts.

■ In the case before us there is no such dispute as to the facts. Douglas is a child of ten years. The decision of the circuit court to modify the custody decree was based on testimony as to the effect upon him—emotionally or otherwise—of the frequent visits with his father. That testimony was undisputed. There was no need, therefore, for corroborating testimony from the boy on this issue. Credulity will be taxed if we assume that under the circumstances the boy could have given an objective opinion as to the emotional impact these visits had upon him or his discipline. We are unable to discern any way in which the defendant was prejudiced by the refusal of the trial court to permit the boy, Douglas, to testify. It follows that we must dismiss the second assignment of error as without merit.

The order of the circuit court modifying the decree of December 2, 1960, is affirmed.