Argued March 6, affirmed May 1, petition for rehearing denied
June 11, 1963

# CAMPAGNA-JONES v. JONES

381 P. 2d 63

*Martin Schedler,* Portland, argued the cause and submitted the brief for appellant.

No appearance by respondent.

Before McALLISTER, Chief Justice, and ROSSMAN, SLOAN, GOODWIN and LUSK, Justices.

ROSSMAN, J.

This is an appeal by the plaintiff, Leota E. Campagna, from an order of the circuit court which denied her motion for a change in the custody of a boy of

whom she is the mother and the defendant, Jacob T. Jones, her former husband, is the father. The plaintiff-appellant and the defendant-respondent were married June 9, 1946. The boy just mentioned, whose Christian name is Thomas, was the issue of the marriage and is the subject matter of this proceeding. The boy was born November 21, 1947, and therefore is now 15 years and 5 months of age. A decree of divorce, which was entered April 24, 1958, awarded custody of Thomas to the plaintiff, but contemplated that she and Thomas make their home with the plaintiff's parents. In October 1959, after the juvenile department of the Circuit Court for Clackamas County had made an investigation of the plaintiff and the defendant, an order of the court awarded Thomas' custody to the defendant. The latter had remarried.

November 2, 1959, the plaintiff and her present husband became married. February 2, 1962, the plaintiff filed the motion for change of custody which is now under consideration. In response to the requirement that motions for a change of custody must point to a change of circumstances that occurred since the entry of the last custody order or to circumstances that were then unknown (our last statement of the rule is *Gonyea v. Gonyea,* 232 Or 367, 375 P2d 808), the plaintiff's brief says:

> "Where the circumstances and conditions surrounding the mother and her home had changed for the better and the circumstances and conditions surrounding the father and his home had changed for the worse, the best interests and welfare of the minor child of the parties demands a change of custody to the mother."

Unfortunately, the plaintiff and her present husband live not far from the house occupied by the

defendant, his present wife and Thomas. The defendant and his wife established themselves there before the plaintiff and her husband moved into the neighborhood. The evidence indicates that the nearness of the two homes to each other causes Thomas to make unscheduled visits to his mother and step-father. The defendant's present wife, as a witness, expressed concern over the facts just indicated and stated that although the couple are purchasing their home they would sell it and move elsewhere if that would improve matters. The defendant and his wife testified that when Thomas became fourteen years of age he became satisfied that he could voice a preference when his custody was the subject matter of judicial attention. Both swore that at that juncture, especially after the plaintiff filed her motion for change of custody, the disciplining of the boy became an increasingly difficult problem. The latter produced tension in the home.

The defendant testified:

"There has been a very definite change in his attitude. He said when he was fourteen he can go with his mother.  *  *  *

\*          \*          \*

"He has the attitude if he doesn't want to do it he doesn't have to, because he can go to his mother  *  *  *.

\*          \*          \*

"Q Now, since the boy has been fourteen, and particularly since the motion for the change of custody, has it been difficult to live with your son in the home?

"A It has been very difficult.

"Q Have you had the cooperation or has there been cooperation from the maternal side of the

family, between the grandparents and your ex-wife, in regard to disciplining the boy?

"A  No, there hasn't been any.

&ast;  &ast;  &ast;

"Q  Now, as I understand it, Mr. Jones, you stated that without any outside influence you can straighten out the discipline problems. Is that correct?

"A  Right.

&ast;  &ast;  &ast;

"Q  And you and he got along fine prior to his fourteenth birthday?

"A  Yes, we did.

"Q  And you didn't have any discipline problems prior to the fourteenth birthday?

"A  Minor discipline problems, nothing great, no."

The defendant's present wife testified:

"Q  Do you feel, Mrs. Jones, without outside influence, that you people could probably discipline Tommy?

"A  Yes.

"Q  Pardon?

"A  Yes, very definitely."

Thomas was a witness. He gave his testimony in the judge's chambers in the presence of counsel and the court reporter, but in the absence of his parents. At its conclusion the capable trial judge who had displayed a commendable interest in this case spoke to the boy in this vein:

"&ast; &ast; &ast;  Whatever decision I do make, my personal advice to you would be accept the Court's decision and live with whoever I decide that you should live with and not be using one against the

other, running from one to the other, complaining to your dad about your mother, or your mother about your dad's actions. You are making the situation between them worse. It is tough on you, I know. But the worse the situation is between them the harder it is on you. Now, I feel that possibly you, yourself, may be using these people one against the other. It hasn't been proven to me, but I feel that that is a possibility. There are also some other things, your low grades in school, * * * But this situation is not going to be helped any now or in the future by you working one parent against the other. They have had their difficulties and that is past and gone. And the best thing is to try to not run from your mother to your father and tell him what she has been doing wrong, or running from your father to your mother and telling her, unless it is something real serious and an honest-to-goodness situation that you think something should be done about it, then you keep them mad at each other and that makes them upset and it makes you upset. * * *"

After both parties had rested, the trial judge expressed himself as follows:

"* * * The boy apparently, when things weren't going too right on another occasion, called upon his father to come and get him. He wanted to live with him. Now, apparently he is calling upon his mother—he doesn't like it there. Something is wrong there, and he wants to come live with her. How long is this going to go on? Well, probably indefinitely. I don't think of any other evidence that would convince the Court that custody should be changed other than what the boy has told his mother and what the boy has told the Court. I am not going to change the custody simply on what he says, therefore, the motion will be denied."

If the conditions in the defendant's home have deteriorated, as the plaintiff claims, it seems permis-

sible to infer that the decline has been in large part due to the efforts of the defendant and his wife to cope with the problems centering in the boy. The trial judge very properly reasoned that unless discipline is successfully exercised the boy may himself become the victim. No one claims that the defendant or his present wife are resorting to cruelty, indifference or unreasonable methods. Both have affection for the boy and the defendant's present wife spoke in terms of admiration and hope for him. If the plaintiff and her husband are encouraging the boy to resist the discipline which the defendant and his wife are seeking to maintain, they should discontinue doing so.

We concur in the trial judge's views and disposition of the motion. The challenged order is affirmed.