Argued July 27, affirmed August 10, 1972

KING, *Respondent, v.* KING (No. 70959),
*Appellant.*

500 P2d 267

*John Henry Hingson, III,* Oregon City, argued the
cause for appellant. With him on the briefs were

Misko, Njust & Bowerman, and Donald B. Bowerman, Oregon City.

*Grant V. Mumpower,* Oregon City, argued the cause for respondent. On the brief was Ronald D. Thom, Oregon City.

Before SCHWAB, Chief Judge, and LANGTRY and FORT, Judges.

LANGTRY, J.

Defendant father appeals from an order denying his motion for change of custody of the parties' five-year-old daughter. The date of the divorce decree giving custody to the plaintiff mother was February 27, 1970. In September 1970 defendant moved for change of custody and after a contested hearing the trial judge denied the motion. The instant motion was filed November 23, 1971. In support of it the defendant alleged that plaintiff kept company with various men friends; that during the major portion of 1971 plaintiff left the child with babysitters, grandmother and defendant for a majority of the days; that defendant is now happily married and financially able to care for the child. Defendant also claimed that plaintiff lives in a neighborhood with a high incidence of crime which is detrimental to the child.

■ With reference to the latter claim the evidence was that plaintiff is in a difficult financial situation and that she lives in a poverty area where there is a higher incidence of crime than most other neighborhoods. The trial judge observed:

"If I am going to make decisions about who has custody of kids depending upon the neighborhood they live in, why, I might as well give up because

we got millions of them in this country living in neighborhoods they shouldn't be * * *."

Obviously the trial court was not impressed with this charge of a change of circumstances justifying a change of custody, nor are we.

The defendant failed to produce any substantial proof of his allegations concerning plaintiff's alleged immoral social life since his preceding change of custody motion. The material allegation upon which he did produce proof was to the effect that plaintiff had allowed the child to be with him and his present wife a majority of the days from February through November 1971. It appears that commencing in February defendant kept track in a notebook of the number of days he had the child with him.[1] This evidence was that the child was with him and his new wife for a bare majority of the total days indicated above. In November he took the child for visitation and refused to return her to plaintiff; instead, he filed the instant motion for change of custody and obtained an ex parte order temporarily changing custody to him until the hearing was held. At the conclusion of the hearing on the instant motion in late December 1971 the judge required that the child be returned to the plaintiff.

The defendant contends that the plaintiff shunted the child into his care for much of the involved time because she did not want to, or was too preoccupied to, take care of the child. The plaintiff disagreed with this contention. In her testimony she explained in answer to a question about the time defendant kept the child during 1971:

"Well, during the summer it was camping, fish-

---

[1] He also tried—without success, because it was not so—to get evidence that the child had been left with babysitters and the grandmother overnight on additional days.

ing, going to the beach, and stuff like this. Things that I really couldn't do because of my limited income, and she would want to go and so I'd let her. If I refuse, you know, something like this, he'd get upset.

"So he'd call back in the middle of the week and want to see her during the week and, well, I kind of bent over backwards because I didn't particularly enjoy being harassed.

"Then there was a couple times that I asked him to take care of her * * *."

Mrs. Brubaker, a licensed babysitter who took care of the child daytimes for several months while plaintiff worked during 1971, testified that she never had the child on weekends and that the plaintiff was quite punctual in bringing the child and picking her up after work. She testified that the child was clean and well clothed on all occasions. With reference to harassment by the defendant the babysitter testified about a phone call that he made to her:

"No. It was at least—oh, I don't know. Probably three months ago. I can't remember the exact time. And he called and wanted to know how many weekends Wanda had dumped Cheryl with me. I told him that she had never left Cheryl with me over the weekend and I says the only time that—he kept insisting that she went to Sunday School with me and I told him that it must have been Bible School [other testimony was that this occurred on some weekdays].

"And I told him that she [plaintiff] said that if Bill [defendant] is going to take her over the weekend, that I might not have her on Monday because he didn't always bring her back Sunday night. And I told Bill this and he said that's because she liked to be with them because they went camping and she likes to be with the other people because they

328

would go over into other campers. They would give her candy and pop and she liked to be with them."

This brief recounting of some of the rebuttal testimony explains why the trial court concluded that there had been insufficient change of circumstances to justify change of custody. The trial court observed at the conclusion of the hearing:

"* * * I find that the chances of a child developing emotional problems as they grow up increases in direct proportion to the thickness of the file involved in a divorce case. You two people remember that.

"* * * * *

"* * * It's too bad every time this Court has to make a decision about where that child is going to be from day to day in regard to his parents. It's an indication to this Court that the chances are enhancing considerably that the child is going to suffer a lot of detriment because of the difficulties between the parents * * *."

■■ We agree with the trial court that it would be nice if the child could have the monetary advantages which the defendant can afford. But this, or defendant's remarriage, are not ordinarily enough to justify a change in custody. *Hendrickson v. Hendrickson,* 225 Or 398, 403, 358 P2d 507 (1961). The defendant's persistent seeking of custody and efforts to make the plaintiff's care of the child look bad will probably accomplish nothing except expose the child to the difficulties children have who grow up in an unstable atmosphere. In this regard, we refer specifically to the language quoted from an article in Vanderbilt Law Review in *Miller v. Miller* decided today.[2] Under the

[2] Miller v. Miller, 10 Or App 330, 499 P2d 826 (1972), quoting Bodenheimer, *The Uniform Child Custody Jurisdiction Act: A*

circumstances of this case, although the question of custody is close because of the time plaintiff has allowed defendant to have the child, we do not believe that we should disturb the order made by the trial judge who saw and heard the witnesses. In arriving at this conclusion we have not overlooked our decision in *Hogan v. Hogan,* 6 Or App 122, 486 P2d 1309 (1971), where custody was changed because the parent having custody had spent too little time with the child. There, the child was kept by grandparents. The parent who had custody was warned by the court several times that he must arrange his affairs so that he personally cared for the child. When he failed to heed the warnings, custody was changed. The circumstances are much different in the case at bar.

Affirmed.

*Legislative Remedy for Children Caught in the Conflict of Laws,* 22 Vand L Rev 1207, 1208-09 (1969).