Argued November 20, affirmed December 9, 1974

IN THE MATTER OF THE DISSOLUTION OF THE MARRIAGE OF
WILSON, *Respondent, and* WILSON,
aka HOWARD (No. 31802), *Appellant.*

528 P2d 1364

*Stephen A. Lovejoy,* Lincoln City, argued the cause and filed the brief for appellant.

*Charles H. Cusick,* Lincoln City, argued the cause and filed the brief for respondent.

Before SCHWAB, Chief Judge, and FORT and TANZER, Judges.

FORT, J.

Following their separation in January 1972, the marriage of the parties was dissolved on May 5, 1972. Custody of the three children, then aged five years, three years, and 15 months, was awarded to the father, with whom they were then residing. On July 1, 1974, the mother filed a motion to modify the decree by changing the custody of the children to her. From an order denying the motion, she appeals.

We affirm. The record shows that at and for a short time after the divorce the mother was living in the home of the parents of another man in whom she was then "interested." She then moved to Portland from the Lincoln City area where the parties prior to the separation and the father at all times here relevant resided. She lived in Portland for 18 months with another man to whom she was not married and worked as a waitress-hostess.

Following this she returned to Lincoln City and early in 1974 became engaged to a third man. She also worked as a waitress and part-time bartender during at least a portion of this period. On May 25, 1974, she married Mr. Howard, the man to whom she had been engaged. As stated, some five weeks later she filed this motion. Such a history obviously raises serious questions concerning the emotional stability of the mother and thus of her capacity to meet the long range needs of the children.

We now examine the father's discharge of his custodial responsibilities. At and before the time of the

decree he was employed in Lincoln City at a Safeway store. He continued working there until in October 1973, when he was promoted and transferred by his employer to its store at Newport. He works six days a week from 7 a.m. to 4 p.m. He has at all times maintained a home for himself and the children in Lincoln City. Prior to his transfer the children were on each working day taken by him to the home of an admittedly highly competent baby-sitter, Mrs. Green, before he went to work and following work taken home by him where he cared for them himself.

By October 1973, when he was promoted, an excellent relationship had been established between Mr. and Mrs. Green and the children, who by then called them "Grandma" and "Grandpa." The oldest child had also entered the first grade in Lincoln City. The Newport job required very substantially increased driving time, thus necessitating a much earlier departure time from Lincoln City. Accordingly, the father arranged that the children stay at night with the Greens six nights a week. The night before each working day he regularly had dinner and spent the evening until bedtime with the children at the Greens' home. On his day off the children were with him at the Lincoln City home. The oldest boy made a good record in school. The father remained the responsible custodial figure in the life of the children. All of the children continued to enjoy excellent care, love and attention from the Greens as well. During this time also the father discharged the indebtedness of nearly $16,000 which he assumed at the time of the decree.

The father too contemplates remarriage, and toward that end he and his fiancee were, prior to the remarriage of the mother and at the time of the hearing,

spending much of their available time with the children. Nothing in the record would support a conclusion that this was in any way detrimental to the welfare of the children.

Appellant relies essentially on two things to support her motion for change of custody: her recent remarriage and the fact that since the father's transfer by his employer to the Newport store the children in addition to spending the days at the Greens also stay there six nights a week. We note in the latter connection that the transfer to the Newport store, as stated above, necessitated a substantially earlier departure time for work from his home in Lincoln City than before the transfer.

■ Ordinarily the remarriage of a party by itself is not sufficient to justify a change of custody. *King v. King*, 10 Or App 324, 328, 500 P2d 267 (1972); *Henrickson v. Henrickson*, 225 Or 398, 403, 358 P2d 507 (1961).

In *Henrickson* the court said:

"* * * In order to justify a modification for the care and custody of a minor child the petitioner is under the burden to show that it would enhance the welfare of the child, or that the change in circumstances since the rendition of the last decree has been such as injuriously affected the child. [Citation omitted.]" 225 Or at 403.

Appellant relies upon *Yeamans v. Yeamans*, 17 Or App 556, 523 P2d 565, Sup Ct *review denied* (1974). In that case the mother was given the custody of the minor children. At the time of the decree she was living with her parents in their home taking care of the children herself. Shortly after the decree she moved out of her parents' home and

in effect turned over to them the custodial responsibility. She then moved into a house with a man to whom she was not married and set up housekeeping. Although she thereafter married him, she made no effort to bring the children back into her home, leaving them with her parents, while she worked nights. Upon proof of such change in circumstances we concluded that the best interests of the children warranted change of custody to the father.

■ Here, on the contrary, Mr. Wilson maintained the same home for himself and the children from the time of the decree and assumed full responsibility for and daily supervision of their care, utilizing the highly competent baby-sitting services of the Greens only as the necessities of his own employment required. We think it clear that appellant here has failed to show such a change of circumstances as would warrant a change of custody. *See: Gonyea v. Gonyea,* 232 Or 367, 372, 375 P2d 808 (1962).

Affirmed.