Argued February 23, reversed March 22, reconsideration denied April 28,
petition for review allowed June 22, 1976

In the Matter of the Dissolution of the Marriage of

GREISAMER, *Appellant,*
*and*
GREISAMER, *Respondent.*
(No. 74-619E, CA 5100)

547 P2d 155

[ 819 ]

*Quentin D. Steele,* Klamath Falls, argued the cause and filed the brief for appellant.

*Ortis W. Goakey,* Klamath Falls, argued the cause for respondent. With him on the brief were Goakey & Harnish, Klamath Falls.

Before Schwab, Chief Judge, and Langtry and Foley, Judges.

LANGTRY, J.

## LANGTRY, J.

This is an appeal by the father of two boys, born August 17, 1968 and August 14, 1971, whose custody was awarded to the mother after a bitterly contested dissolution case in which the main controversy was over custody. The parents had lived in Pennsylvania and then California. The father was in the Air Force and the mother was bearing the children and working off and on. She is a registered nurse. After the father got out of the Air Force they moved to Klamath County and acquired a farm. Not long thereafter father filed for a separation from mother in Klamath County Circuit Court. ORS 107.025(2)(a). That case was contested and after both parties had submitted extensive evidence concerning child custody the court decreed the separation and awarded custody to father on November 20, 1974. On December 8, 1974 father filed a new suit, apparently under authority of ORS 107.465(2),[1] for dissolution of the marriage in the same circuit court, alleging, inter alia, that he had been awarded custody in the separation suit and that he sought to continue that custody. Mother contested custody again. The matter was set for trial on March 18, 1975. Mother obtained a continuance and the case was finally tried in June 1975 and decided in August. The same judge heard both cases. He awarded custody to mother in the second case.

Father alleges error in that (1) the continuance was not granted in accordance with law and it deprived him of his right to a prompt and fair hearing; (2) the court committed reversible error by permitting the relitigation of facts and issues which had already been decided in the separation suit; and (3) it changed the custody of the children from the father to the mother.

■ (1) The motion for postponement of the trial from

[1] ORS 107.465(2) provides:

"Nothing in this section is intended to prevent either party to a decree of separation from commencing at any time in the manner required by law a suit for dissolution of the marriage."

[ 821 ]

March to June 1975 was based by mother upon her alleged inability to produce witnesses on the March trial date. The trial court initially allowed the postponement ex parte, but upon protest conducted a hearing upon the matter. ORS 17.050 provides that such motions "Shall only be made upon affidavit showing the materiality of the evidence * * *," etc. No affidavit was filed with the motion in this case and it appears to this court that the trial judge's action was not in compliance with the applicable statutes and was erroneous. It is difficult for us to determine whether father's case was prejudiced thereby. At least, we are satisfied that the illegality of the court's action in this regard was not reversible error inasmuch as the parties were utimately given adequate opportunity to present their full cases within three months from the previous time set for the trial.

(2) The file in the separation suit was made an exhibit in this case. However, no transcript of the testimony in that case is before us. From the transcript that we have we learn that several witnesses who testified in the separation case testified again to the same facts bearing upon custody in the second case. This testimony was admitted by the trial court over frequent and strenuous objections made by father's counsel. Examples of the objections and the court's rulings follow: While a witness from California, Mrs. Bowman, was testifying father's counsel objected to testimony she was giving of events that had happened several years earlier that had been the subject of testimony at the previous trial. Mr. Goakey, mother's counsel, contended that the testimony was proper as a basis for Mrs. Bowman to testify as to her opinion about which would be the best custodial parent. Father's counsel objected, saying:

"* * * I don't know where Mr. Goakey has found any cases, but the Oregon statute is clear that when we introduce the decree in this case it is conclusive proof of all issues that were litigated at the last hearing.

"THE COURT: Temporary custody.

[ 822 ]

"MR. STEELE [father's counsel]: It was not temporary custody, Your Honor. That was a decree on the merits. The decree of separation was a decree on the merits, and that was giving him the future care, custody and control * * *.

"* * * * *

"THE COURT: I'm going to overrule your objection. She can testify as to any knowledge she has which would help the Court to decide the issues * * *.

"* * * * *

"THE COURT: I don't understand the point you're making about litigated.

"* * * * *

"[Father's counsel:] * * * And if she has evidence to testify to concerning events that have taken place from the date of the last hearing until now, we have no objection to that testimony. But we do object to rehashing things which were completely litigated at the last hearing. And that is the law.

"THE COURT: You may have a continuing objection, and it's overruled. *I'm not going to try to draw distinctions based on the date of the last hearing.* " (Emphasis supplied.)

Later a witness, Pamela Johnson, was asked questions concerning things which she said had occurred in California before the parties had moved to Oregon before the separation suit. Father's counsel objected, his objection was overruled, and on cross-examination the following occurred:

"Q. Mrs. Johnson, is it not true that you were here at the last hearing sitting out in the hall in the Courthouse?

"THE COURT: What's the relevance.

"MR. STEELE [father's counsel]: I want to put it on the record under the rule. I want it on the record.

"THE COURT: I am going to continue overruling those objections. You've got a standing objection. If you keep raising them, you're going to be in contempt of Court.

"MR. STEELE: I can put it in under the rule. I want

[ 823 ]

to ask her whether she was not in Oregon right before the last hearing or available to testify.

"THE COURT: What's the relevance of that question You want to reargue the objection I've overruled?

"MR. STEELE: I want to put it on the record.

"THE COURT: Okay, put it on the record, under the rule. Yes, you may answer.

"THE WITNESS: A. No, I was not.

"MR. STEELE: Q. You were not here in Oregon in October of 1974 with your husband David Johnson?

"A. I was not here the last time my husband was here to testify, no, I was not.

"Q. In October of '74 you were not here?

"A. I answered you.

"Q. Had you been there?

"THE COURT: We're not going into that, that is not permissable [sic]. You do not have a right. I just took away your right.

"MR. GOAKEY: Either Mr. Steele should go to jail for contempt or the Court should be allowed to conduct a trial.

"MR. STEELE: I'm trying to conduct a trial, but I'm restricted in what I can ask the witness.

"THE COURT: Yes, you are."

■■ A trial judge has considerable latitude in the testimony he allows and the conduct of the trial. This perhaps should be particularly true in a case the nature of that here involved. Nevertheless, nothing is clearer in the law than that facts once litigated and decided may not be litigated over again in the same context, as here. The trial court did not appear to understand this rule of law. When the custody of children is decreed it is ordinarily permanent, and may be changed only upon a motion for change of custody which may take into consideration the events that have occurred since the former decree in determining whether there has been a change of circumstances. In the case at bar the same judge had made an order which decreed custody on November 20, 1974. When he heard the same question in the dissolution suit in

the summer of 1975 he apparently was under the misapprehension that he had only ordered temporary custody eight or none months earlier. A reading of the decree in that suit dispels any such idea. The decree held, "\* \* \* Petitioner is awarded the future care, custody and control of the minor children \* \* \*." *See also Gwinner and Gwinner,* 24 Or App 743, 547 P2d 151 (1976). ORS 43.130 provides that:

> "The effect of a \* \* \* decree \* \* \* in an action, suit or proceeding \* \* \* is \* \* \*
>
> "\* \* \* \* \*
>
> "(2) \* \* \* conclusive between the parties \* \* \*."

ORS 43.160 provides that:

> "That only is determined by a former \* \* \* decree \* \* \* which appears upon its face to have been determined \* \* \*."

In *Faist v. Faist,* 147 Or 623, 628, 34 P2d 937 (1934), the court held:

> "Suits for divorce and those for separate maintenance are proceedings which have a direct and intimate relation with each other. Therefore, issues which have been determined in a divorce suit can not be reopened in a subsequent proceeding for separate maintenance between the same parties, or *vice versa: Matlock v. Matlock,* 86 Or. 78 (167 P. 311); 2 Freeman on Judgments (5th Ed.) §909; 34 C.J., § 1289."

The rule with reference to evidence to consider as the basis for a successful motion for change of custody of children has long been established. Thus, in *McKissick v. McKissick,* 93 Or 644, 649, 174 P 721, 184 P 272 (1919), a motion for change of custody after decree, the court said:

> "The motion before us is in the nature of a new proceeding based necessarily upon matters occurring since the former decree. We cannot, in the absence of an appeal, go behind the former adjudication and make gleanings from the evidence upon which the suit was there determined or the custody of the child adjudicated \* \* \*."

*See also Campagna-Jones v. Jones,* 234 Or 378, 381

P2d 63 (1963); *Gonyea v. Gonyea,* 232 Or 367, 370, 375 P2d 808 (1962); *Henrickson v. Henrickson,* 225 Or 398, 402-03, 358 P2d 507 (1961); *Goldson v. Goldson,* 192 Or 611, 236 P2d 314 (1951), *overruled on other grounds Shrout v. Shrout,* 224 Or 521, 524, 356 P2d 935 (1960).

■ It is our conclusion that the judge's overruling of the legitimate objections of father's counsel exceeded the bounds of his discretion. The stale evidence that was produced went far beyond bases for opinions of obviously biased acquaintances and relatives about who had been the best custodial parent. Inasmuch as these matters which were admitted were obviously considered by the trial judge in arriving at his decision, they were prejudicial to the father's cause. This is reason for reversal.

(3) Upon the merits and the competent evidence the court heard, in our de novo review we find that in the interval between November 20, 1974 and the summer of 1975—whatever the father's shortcomings may previously have been—he was giving the children quite adequate care. The neighbors who furnished babysitting for him while he worked his farm and with whom he was friendly appeared in substantial numbers as witnesses to attest to the good care he was giving the children. One babysitter-mother with whom he left the boys during the day (one went to school and came there after school, the other was too young for school) remarked about the cleanliness of the boys' clothing, about how the father would comb the boys' hair before he brought them into the house and about how adequately he appeared to feed and clothe the boys. Other neighbors, men and women alike, spoke well of the care he gave the boys, and of the boys themselves.

■ The mother's evidence against the father related almost entirely to sordid events that had occurred before the custody decree in the separation suit. She also produced testimony about how she had very commendably established herself in the interval after the separation decree. It is obvious that much of the

[ 826 ]

derogatory testimony about the father was heard by the trial judge in the previous hearing. In view of the appalling nature of some of it, it is difficult to understand why the trial judge then made the decree which he did.[2] However, at this juncture the court is concerned with whether a change of circumstances occurred after November 20, 1974 sufficient to justify changing the custody of the boys again. In *Gwinner and Gwinner,* supra, we quoted from *Crane v. Crane,* 17 Or App 637, 639, 523 P2d 596 (1974), reiterating that "the 'change of circumstances' rule is designed 'to avoid constant litigation *and more importantly to provide young children stability of environment* * * *.' * * *" Slip opinion at 5. Even though the father may well have been a bad father prior to November 20, 1974, the evidence before the court indicated that he had been a good father since that time. It is our conclusion that the court erred by improperly applying the change of circumstances rule, both to the admission of evidence and in arriving at a conclusion. It is tragic that the boys must be caused another move in their homes and family surroundings by the errors which occurred in this trial. The former custody arrangement is restored, including provisions for visitation.

Reversed.

---

[2] As we have indicated, we do not know how much, except that it was substantial, of the evidence produced at the former trial figured in the decision in this one. We do discern that father's mother did not testify against him before, but did this time. On the record, she does not come through as a very convincing witness, as is true of several others of the mother's witnesses who appeared to be given to exaggeration and extreme partisanship.