# In the Matter of the Marriage of
## ROSS,
*Respondent,*
*and*
## ROSS,
*Appellant.*

### (No. 76-0969, CA 15805)

608 P2d 1214

Therese Engelmann, Eugene, argued the cause and filed the brief for appellant.

Wayne E. Allen, Eugene, argued the cause and filed the brief for respondent.

Before Schwab, Chief Judge, and Thornton and Campbell, Judges.

CAMPBELL, J.

**CAMPBELL, J.**

The mother has appealed the trial court's order allowing a change in the father's visitation rights. We affirm.

The parties' marriage was dissolved in 1976. The mother was awarded custody of the parties' two sons. The father's original rights of reasonable visitation were amended in 1978 to give him visitation on alternate weekends and the entire month of August.

The father is 35 and the mother is 33 years of age. The mother is a full-time paid director for a Eugene sports program. The father has been a graduate teaching fellow at the University of Oregon, working on his dissertation for a doctorate degree. He plans to find a full-time job teaching the English language in Spain for about a year.

The father petitioned the court to allow him to have the two sons visit him in Europe during the summer of 1980. The sons would be 9 and 7 years of age at that time. After a contested hearing, the trial court entered an order granting the father a "visitation of 45 continuous days in Europe" during the summer of 1980 only "in lieu of his August visitation." Travel expenses to and from Europe are to be paid by the father. The order is based upon the condition that the father will be in Europe at the time of the visit. The order sets up a procedure for the sons' air flight to Europe and the return flight to Oregon. Both parties contemplate that the sons will be traveling alone and not in the company of an adult relative or friend.[1]

The mother has appealed to this court and has enumerated three assignments of error. All of the assignments raise the general contention that the change in visitation is not in the best interests of the children.

---

[1] It was estimated at the hearing that a jet flight to Europe would take between seven and thirteen hours.

The mother argues the order requires two young children to fly to an uncertain city in Europe. They will be cared for by unknown persons when their father is working and surrounded by a strange culture where everyone speaks a strange language. They will be totally without contact with their mother for the entire period. In Eugene the boys will be near their grandparents and can take gymnastics and swimming lessons while their mother is at work. They have a very close relationship with their mother and have called her during previous visitations when they needed reassurance. The mother is concerned that the father might not return the boys to the United States at the end of the visitation.

On a motion to change visitation rights the paramount consideration is the welfare or best interests of the children. *Perley v. Perley,* 220 Or 399, 349 P2d 663 (1960).

The trial judge carefully considered this matter. At the conclusion of the hearing he said:

> "I'm not concerned that the children wouldn't be returned. I'm not concerned about the fact that the children may have made tentative plans for next summer. I'm not concerned that the children wouldn't be well cared for in their father's custody. He's a responsible human being, and he's the father of those children and I assume, having no reason to believe otherwise, that he's as capable of taking care of them, that their mother is. * * * I assume that he loves them and has the will and ability to take whatever steps are necessary for their protection in any circumstance. I am not concerned about the deleterious effect with the children's relationship with their mother, and I'm sure that's well established. And the absence would not jeopardize that.
>
> "* * * * *
>
> " * * * I've indicated that I have no reason to distrust him as a parent, and I assume and I think it's—I'm justified in assuming that if he's not in a position to spend a reasonable amount of time with his children, if I allow them to go, he will not fly them

across the Atlantic and fly them back again just to spite his wife. I assume that he's capable of making the kinds of decisions that parents make every day regarding their children's welfare and balancing their own desires against the needs of their children. And I assume that by that time, if he's not able to be with them, he will make appropriate—if given the opportunity, if he has them, he will make appropriate arrangements for their care. * * * I expect responsible conduct on his part as a father. I anticipate it. * * *"

In *Bennehoff v. Bennehoff,* 209 Or 224, 225-26, 304 P2d 1079 (1956), the Oregon Supreme Court said:

"In the difficult and delicate task of attempting to determine where the welfare of children lies as between conflicting claims of warring parents, the judge who sees the parties and their witnesses and listens to their testimony has a position of advantage over the justices of this court. This axiom of appellate court review, so often referred to in equity suits, is of prime importance in its application to a child custody case which involves, as does this one, an appraisal of the character, temperament, and disposition of the contending parents, some of the determining marks of which may reveal themselves to one who sees and observes the persons concerned but are not to be found in the typewritten pages of a cold record. The decision of the trial judge in such a case is, therefore, not to be lightly set aside."

In considering a motion to modify a decree respecting the custody or visitation of minor children great weight will be given to the findings and conclusion of the trial judge. *Meier and Meier,* 286 Or 437, 595 P2d 474 (1979); *Gonyea v. Gonyea,* 232 Or 367, 375 P2d 808 (1962); *Godfrey v. Godfrey,* 228 Or 228, 364 P2d 620 (1961); *Udy v. Udy,* 195 Or 156, 244 P2d 615 (1952).

Affirmed.

### THORNTON, J., dissenting.

After reading this record, I find this overseas visitation proposal to be ill advised and not in the best

interests of these children. Moreover, I feel that it is fraught with potential danger of psychological harm to them.

While this plan might be acceptable if the children were teenagers, these youngsters, who are only seven and eight years old respectively, are plainly too young to be separated in this fashion from their mother and their present familiar surroundings in Eugene, where they live next door to their maternal grandparents, and transported alone to Spain, where they would remain for eight weeks under as yet unknown circumstances.

Anyone who has ever witnessed the sometimes devastating effect of homesickness in children of tender years who are suddenly separated from their home and loved ones for even a short time could give but one answer to the issue presented here. The younger child experienced a similar homesickness reaction during an earlier separation. Moreover, these children would now be transported to a foreign country.

It is common knowledge that not infrequently even college-age young people who go overseas in the Peace Corps or in the various overseas study programs sometimes suffer from severe and traumatic "culture shock" and must be sent home.

Even if the above mentioned factors were not reason enough to veto this proposal, the record indicates that the father as yet has no job in Spain nor the vaguest idea where he will be living and what arrangements, if any, there will be available for an English-speaking housekeeper or babysitter to care for the children while he is working at his hoped-for job.

The only circumstance under which this plan should be approved is if provision were made for the mother, grandmother, or other responsible member of the family satisfactory to the court to accompany the children on the trans-Atlantic airplane flight and who would live with or near the children for the duration of their proposed stay in Spain.