Argued October 31, affirmed November 14, 1969

## COOLEY, *Respondent, v.* COOLEY, *Appellant.*

461 P. 2d 65

*Kenneth E. Shetterly, Jr.,* Dallas, argued the cause for appellant. On the briefs were Hayter, Shetterly, Noble & Weiser, Dallas.

*Richard D. Barber,* Salem, argued the cause for respondent. On the brief were DeArmond, Sherman & Barber, Salem.

Before LANGTRY, Presiding Judge, and FOLEY, FORT and BRANCHFIELD, Judges.

BRANCHFIELD, J.

This is an appeal by the defendant husband from a decree which denied a divorce to the plaintiff, granted a divorce to the defendant, divided property between the parties, awarded custody of the parties' minor son to the plaintiff, and provided for payments to the plaintiff for the support of the minor child.

After the plaintiff filed her complaint in this case, the defendant filed a motion for temporary custody of the son, Robbie. On June 19, 1968, the court conducted a hearing on the motion. The testimony taken at this hearing showed that after the separation of the parties, Mrs. Cooley, accompanied by her four-year-old son, had spent several nights in the home of another

man. There was testimony that the car belonging to this man was parked on a street outside plaintiff's apartment all night on several occasions during the same period of time. The court awarded custody of the child to the defendant *pendente lite,* giving the wife the right of reasonable visitation but ordering that she not have any adult male companions with her in the presence of the child.

Thereafter, the case came on for trial on September 26, 1968. The decree of the circuit court was entered October 14, 1968.

There was no appeal from that portion of the decree awarding a divorce to the defendant.

During the interval between the temporary award of custody and the divorce trial the child was rotated among three different homes. The boy stayed overnight with his aunt and uncle, with the father picking him up about noon. They would be together then for three or four hours until the defendant took him back to the aunt and uncle on his way to work. The plaintiff usually had her son on Wednesday nights and from Friday afternoon until Sunday. The boy was with the defendant, who had custody, for about 20 hours per week. He spent from two to two and one-half days per week with his mother, and the rest of the time he was with his aunt and uncle. The arrangement was unsatisfactory to everyone involved.

Testimony showed that if the defendant were to retain custody, he would continue to rely upon his brother and sister-in-law to keep the boy most of the time, with the possibility that his work hours might be changed to a somewhat more suitable time for caring for the child.

After the June hearing, at which the plaintiff lost

the custody of her child, she moved back into her parents' home, where she kept the child during his visits to her.

The plaintiff claims to have repented her indiscretions following the separation of the parties. She testified as follows:

"Q. Do you feel that you have rehabilitated yourself from any indiscretions that may have occurred in the past?

"A. I have learned a very good lesson or a bad one, I don't know which way you'd put it. But these last three months have been hell.

"Q. Anything or any person in the world who you would permit to come between you and your son?

"A. No.

"Q. There's no relationship as nearly important as that of your son and you.

"A. No.

"Q. You are willing to cut off any existing relationship?

"A. I have cut them all off."

Plaintiff's mother corroborated her testimony. There was no evidence to the contrary.

The trial court must have been convinced by the testimony that both parents love Robbie, and either would take excellent care of him. But it is evident that the trial court believed that the welfare of the child would be furthered if he were placed with his mother. The Supreme Court said in *Shrout v. Shrout,* 224 Or 521, 523, 356 P2d 935 (1960):

"It is a universal rule, frequently stated by this court, that in providing for the custody of children, the controlling consideration is the welfare

of the children—all other rules are secondary and of value only as they aid the court in deciding what is best for the children. * * *"

■ This court is reluctant to disturb the decree of the trial court as to the custody of children where the case is purely one of fact, and the evidence is sufficient to warrant the conclusion reached by the trial court. *Bennehoff v. Bennehoff,* 209 Or 224, 225, 304 P2d 1079 (1956); *Henry v. Henry,* 156 Or 679, 69 P2d 280 (1937).

■ The defendant charges error in awarding the custody of the minor child to the plaintiff. He argues that the custody should not be changed from the award made *pendente lite* except upon a showing of a change of circumstances.

There was evidence from which the trial court might have found a change of circumstances in the time elapsed between the June custody hearing and the September divorce trial. He did not rest his decision on that ground and did not need to do so. The general rule with regard to modification is stated in *Wells v. Wells-Crawford,* 120 Or 557, 564, 251 P 263, 251 P 907 (1927). The Supreme Court there said:

"The modification of a decree, for the care and custody of a minor child of divorced parents, must be based on some change in the circumstances relating thereto and occurring since the rendition of the original decree, or upon some fact not known at the time of such decree. * * *

"In order to warrant the court in modifying a decree for the care and custody of such minor child, it should be shown that such modification would enhance the welfare of the child, or that the change in circumstances * * * has been such as injuriously affected the child. * * *"

Similarly, see *Gonyca v. Gonyea*, 232 Or 367, 375 P2d 808 (1962); *Henricksen v. Henricksen*, 225 Or 398, 358 P2d 507 (1961), and *Kellogg v. Kellogg*, 187 Or 617, 213 P2d 172 (1949). But the rule as stated applies only to modifications of a decree, not to orders *pendente lite*. The language of those cases does not inhibit the trial court from entering an appropriate decree, regardless of the temporary custody prior to the entry of any decree.

We have conducted an extensive survey of Oregon divorce cases where the question of custody became an issue. We found none which required the showing of a change of circumstances between the entry of a temporary order and the entry of a decree. Most of the cases do not even show what the custody was prior to the decree.

*Gibson v. Gibson*, 196 Or 198, 247 P2d 757 (1952) contains language which, on the surface, appears to support defendant's position. At page 213 of the Oregon report, the Supreme Court, speaking through Mr. Justice ROSSMAN, said:

> "* * * Obviously, there must be an end to controversy, especially when it arises out of the disputes of divorced parents concerning their offspring, and, accordingly, orders entered by the court upon the subject are deemed final as to the conditions existing at the time of the entry of the order. That is true even if the order was entered ex parte: *Phillips v. Phillips*, 175 Or 14, 149 P2d 967. As a result, a parent who seeks a modification of an order controlling custody has the burden of proving a change in the attendant circumstances or of showing that a material fact existing at the time when the order was made was not disclosed to the court: *Flanagan v. Flanagan* [195 Or 611, 247 P2d 212 (1952)]; *Goldson v. Goldson*, supra;

*Shrader v. Shrader,* 188 Or 199, 214 P2d 803; *Cripe v. Cripe,* supra; *Leverich v. Leverich,* 175 Or 174, 152 P2d 303."

In *Gibson,* the trial court, subsequent to the entry of the decree awarding custody to the wife, entered an order which awarded "the temporary care, custody and control" of the child to the father. It is this "temporary" order to which the court was referring in the above quoted language. The cases cited in that quotation are authority only for the requirement that a change of circumstances must be shown when a party seeks to modify a decree. They do not discuss the entry of a decree which differs from an earlier order *pendente lite.*

We have found few cases in other jurisdictions which have dealt with a request that a change of circumstances must be shown. One of such cases is *State ex rel McKenzie v. LaDriere,* 294 SW2d 610 (Mo 1956), which held that such requirement applied only to a final award of custody, not a temporary order. In *Graham v. Graham,* 219 Ga 193, 132 SE2d 66 (1963), the court said:

"The authority of the presiding judge, frequently referred to as plenary, * * * to control the custody of minor children (under age 14) pending a divorce suit between their parents is very broad, so that in the exercise of sound discretion the judge may from time to time, until the final decree is entered, modify his orders in this respect and transfer the possession of the children from the persons to whom custody was originally granted and commit them into the care of other and different parties. * * * Such orders are necessarily interlocutory, * * * because in the event there is no valid divorce granted upon the trial of the case the orders previously entered con-

cerning the custody of the children pending the divorce suit, without any action on the judge's part except the denial of the divorce, are rendered inoperative and are automatically rescinded.  *  *  *

"The orders entered by the presiding judge pending the divorce suit being of a temporary nature are obviously not final judgments to the grant or denial of which a writ of error lies.  *  *  * [Citations omitted]."

These two decisions seem to be representative of the law in other states.

Orders *pendente lite* are often entered ex parte. Applications for temporary orders which are resisted are frequently set down for hearing 20 or 30 at a time. In most cases, disposition is made after brief testimony or stipulations in open court. It is seldom that the circumstances require a lengthy hearing. The trial judge knows that if an error is made in awarding temporary custody, he will have an opportunity to correct that error. The matter remains within the control of trial court until he enters his final decree.

The statute, ORS 107.090(1) (b), permits the trial court, in its discretion, to provide:

"For the care, custody and maintenance of the minor children of the marriage during the pendency of the suit."

Such order is clearly temporary in nature. The law does not require proof of a change of circumstances before the court enters a decree taking custody away from the parent to whom it was given under a temporary order.

During their marriage the parties acquired a 96-acre farm in Polk County upon which they resided. They also owned some farm machinery, furniture, a

car and pickup and a building lot located in Washington County.

The defendant claims the court below erred in decreeing that the parties are the owners of the Polk County real property as tenants in common subject to the requirement that the defendant occupy the property, make the payments, pay the taxes, maintain the improvements in good condition and credit the plaintiff with one-half of the principal payments made on the existing mortgage.

The defendant cites *Killam v. Killam*, 251 Or 59, 444 P2d 479 (1958), and *Michael v. Sphier*, 129 Or 413, 272 P 902, 73 ALR 1 (1929), in support of his claim that no one should be compelled to hold property in common with another. As the plaintiff points out, it would probably be more correct to say the law is that no one should be compelled to *use* property in common with another. In *Killam v. Killam,* supra, as part of a property settlement agreement entered into in a divorce proceeding, the parties became mutually entitled to use a boat, the title to which would remain in trust with their daughter until the boat was sold. The parties were unable to use the boat harmoniously under the agreement and the husband brought a suit for partition, asking that the boat be sold and the proceeds divided. The court held that the parties each had an undivided one-half interest. The boat was ordered sold, with the proceeds to be divided after payment of expenses. The Supreme Court affirmed the trial court, saying at page 1359:

> " 'Courts should be, and are, adverse to any rule which will compel unwilling persons to use their property in common. The rule of the civil

as of the common law, that no one should be compelled to hold property in common with another, grew out of a purpose to prevent strife and disagreement.  *  *  *  20 R.C.L., p. 716'. Michael v. Sphier, 129 Or 413, 418, 272 P 902, 73 ALR 1 (1929)."

■ In this case, the trial court obviously intended that the parties be half owners of the property and that the equities remain equal, even though the husband would be making payments on the principal. We cannot say that the trial court abused its discretion in giving the husband the right of use and occupancy without payment of rent. Requiring him to keep the place in good condition and to pay the taxes and mortgage. payments appears to be reasonable. If the defendant now wishes to be relieved of the requirements for maintaining the property, he has available to him the option provided by ORS 107.100(5) which provides in part as follows:

"If, as a result of a suit for the dissolution or annulment of a marriage, the parties to such a suit become owners of an undivided interest in any real or personal property, or both, either party may maintain supplemental proceedings by filing a petition in such suit for the partition of such real or personal property, or both, within two years from the entry of said decree  *  *  *."

■■ The defendant further complains that the court erred in decreeing that he assume and pay certain debts of the parties, in requiring him to keep insurance in force and vesting ownership of a life insurance policy in the minor child of the parties. The court has broad power to determine the division or other disposition between the parties of the real or personal property of either or both of the parties as may be just and proper in all the circumstances. ORS

107.100(4). Since the adoption of ORS 107.410 in 1961, the court sitting in proceedings for divorce has full equity powers. It requires no great stretch of the imagination to find that an order requiring the husband to pay certain debts of the parties acquired during marriage is appropriate as a division or other disposition of their property.

■ Courts frequently require the husband to maintain medical and hospital insurance on the children of the parties. It is within the power of the court to make such provision as part of the maintenance of the child. A similar situation exists concerning life insurance policies. Making Robbie the life owner of the policy on his own life is additionally for the benefit and maintenance of the child and within the power of the court to order.

At the time of oral argument, defendant's counsel informed this court that defendant had been in an accident and had suffered serious and disabling injuries after the entry of the divorce decree. This frankness is commendable. In determining to affirm the award of custody and child support payments to the mother, we have not taken the accident into account. We do not know whether the injuries decrease or enhance his ability to look after the boy. It may be that the defendant will now require some relief from other portions of the decree. It would be useless for us to speculate as to whether any change is needed. The trial court can take action if requested and if appropriate.

The decree is affirmed without costs to either party.