Argued March 16, affirmed April 23, 1970

STONEBRINK, *Appellant, v.* STONEBRINK,
*Respondent.*

468 P2d 546

*Robert E. Swift,* Newberg, argued the cause for
appellant. With him on the briefs were Swift & Swift,
Newberg.

*Jack C. Nulsen, Jr.,* Newberg, argued the cause and filed the brief for respondent.

Before SCHWAB, Chief Judge, and FORT and BRANCHFIELD, Judges.

FORT, J.

These two appeals challenge separate awards of custody of three minor children to the defendant mother.

In April 1968, plaintiff father filed suit for divorce. In his duly verified complaint he alleged that the mother was a fit and proper person to be awarded the custody of the children. His prayer specifically sought the award of custody to her. The case was tried as a default matter.

At the trial, plaintiff testified:

"Q Where are the children now?
"A They're with their mother.

"Q And it's satisfactory with you? She's a proper and fit person to care for the children?
"A Right.

"Q Subject to visitation rights for yourself?
"A Right.

"Q Now, you're willing to pay support for the children, are you not?
"A I am."

After testifying his wife had left with another man, he testified further:

"Q And you are willing that your wife have the children and you pay the support?
"A Yes."

The court granted the divorce on August 30, 1968, determined the property rights, awarded the defend-

ant mother "the temporary care, custody and control" of the children, ordered an investigation by the Yamhill County Juvenile Department, and reserved the question of permanent custody to a later date. This procedure has been approved in *Watson v. Watson,* 213 Or 182, 323 P2d 335 (1958). We are bound by that rule.

Plaintiff states that investigations were conducted pursuant to the decree, and by his affidavit filed February 26, 1969, he asserts "that said report has been filed." The affidavit also alleged his own remarriage and desire for the children's permanent custody.

Based thereon the court issued its order to show cause why the permanent custody of the children should not be awarded to him.

Proceedings were held in April 1969. At that trial the plaintiff testified:

"Q Is it your testimony, Mr. Stonebrink, that your ex-wife always had been a good mother until the time of the divorce, is that correct?
"A That's right, Jack."

Concerning the report of the investigation, the transcript reveals:

"MR. NULSEN: * * * I notice the decree provides that the Juvenile Department of Yamhill County shall cause investigation to be made as to the—(Reading)—I do not at this time have any knowledge of any report and to what its contents consist of.

"THE COURT: The file [is] before me now, and there is certain correspondence from this Juvenile Department with Idaho, but a report has not been submitted, so there is really nothing of any tangible nature with this file to indicate any in-

vestigation. I'll let you review the correspondence afterward."

Neither the letters nor the elusive report, however, are included in the transcript or the record.

At the conclusion of that hearing the court entered an order granting "the care, custody, and control" of the two boys to the defendant mother, and further provided that "the Court reserves for further hearing the determination" of the custody of the daughter.

The plaintiff filed notice of appeal on May 19, 1969, from that part of the order granting the custody of the two boys to the defendant.

On June 13 the transcript reveals the following:

"THE COURT: * * * At the conclusion of the last hearing the Court took the matter under advisement as to Sandra Jo in order that Sandra Jo might remain on with her father and continue her education here and complete this school year. At that time the Court indicated it would rehear the matter and announce its conclusion. Considering the fact that this case might be appealed I think it would be advantageous if the Court would interview Sandra Jo in chambers in the presence of the Court Reporter and then have her testimony subsequently sealed and the Supreme Court could then refer to her testimony in the event of an appeal. Both lawyers have stipulated that this interview should take place outside the presence of all parties and be confidential between the Court and the girl. So that's about it. You remember what happened here previously, don't you, Sandra, when we were in here and talked this matter over?

"SANDRA JO: Yes."

The court in chambers continued to interview Sandra Jo, then 15½ years old. She was not sworn.

By stipulation, neither the parties nor counsel were present.

Thereafter in open court the trial judge advised counsel the interview was completed and awarded custody of the girl to the defendant mother.

An order confirming this was duly entered on June 18, 1969. Plaintiff father appealed on June 20, 1969, from that order. The appeals were consolidated for hearing.

*Watson v. Watson*, supra, lays down the general rule:

> "We are of the opinion that an obligation rests upon a court of divorce to, within a reasonable time, award the custody of the child to some person, usually one of the parents. * * *" 213 Or at 184.

Since approximately nine months elapsed between the divorce decree and the custody award of two of the children, and ten months in the case of the third child, we have carefully examined the record to determine whether such a period was in fact a reasonable one.

■ The making of an investigation such as ordered here by the court normally should not take any such period of time as here transpired. The welfare of children and the requisite planning required by those to whom custody is to be entrusted normally are both best served by expeditious handling.

Here, however, much of the delay, as we glean it from the record, was caused by the inability of the Yamhill County Juvenile Department, which was directed to make the investigation, to obtain necessary information from the out-of-state agencies in the area where the defendant mother lived. Here, too, both

parties apparently remarried in the early months following the decree.

It must be remembered that an award of custody normally is expected to speak as of the date of the decree. The statute provides for custody modification after a decree. ORS 107.130.

■ The law is settled that an order of temporary custody is not appealable, since it is not a final order. *Watson v. Watson,* supra. Thus the effect of postponing an award of custody at the time of the granting of the divorce decree has the effect of denying to either party the right to appeal so far as the matter of custody is concerned, and the trial court is left free to make such award of temporary custody as it deems appropriate. The effect of the latter order then is to deprive each party, during its continuance, of the right of appeal concerning custody, and, as here, to require an independent appeal not only on that issue but, again as here, even as to one or more of the children.

■ We are of the opinion that in view of its obvious infringement upon the right of a prompt appeal, reservation of a decision on custody, ancillary as it is to the divorce, should be used only in exceptional cases where the best interests of the child clearly require it, and should be limited to the shortest practicable period.

■ The findings of the trial court are entitled, in custody proceedings, to great weight. *Mackey v. Mackey,* 1 Or App 177, 460 P2d 371 (1969).

In *Cooley v. Cooley,* 1 Or App 223, 461 P2d 65 (1969), we said:

"This court is reluctant to disturb the decree

of the trial court as to the custody of children where the case is purely one of fact, and the evidence is sufficient to warrant the conclusion reached by the trial court. *Bennehoff v. Bennehoff,* 209 Or 224, 225, 304 P2d 1079 (1956); *Henry v. Henry,* 156 Or 679, 69 P2d 280 (1937)." 1 Or App at 227.

From our examination of the evidence we see no reason to disturb either of the awards of custody made by the trial court.

Each judgment is affirmed.