Argued December 16, 1975, remanded with directions March 22, reconsideration denied April 21, petition for review denied May 11, 1976

In the Matter of the Marriage of

GWINNER, *Appellant,*
*and*
GWINNER, *Respondent.*

(No. 26182, CA 4986)

547 P2d 151

*Myron L. Enfield,* Salem, argued the cause for appellant. With him on the brief were Smedema, Evashevski & Marek and Forest Evashevski, Jr., Corvallis.

*Frederick L. Decker,* Albany, argued the cause for respondent. With him on the brief were Goode, Goode, Decker, Hinson & Ryan, P.C., Albany.

Before Schwab, Chief Judge, and Langtry and Lee, Judges.

LANGTRY, J.

**LANGTRY, J.**

This is a custody case. The two children, one a boy now 9 and one a girl now 7, were originally awarded to wife by a dissolution decree apparently entered in May 1972.[1] In May 1975 father moved for a change of custody to himself. The court ordered an investigation under the authority of ORS 107.425 (1).[2]

On August 7, 1975 father was awarded "temporary" custody, to continue until June 10, 1976 and at that time, at the request of either party, the matter would be set for "determination of permanent custody." Mother appealed, and father moved to dismiss the appeal because the order was for temporary custody. We denied the motion. We find no precedent or reasoning that indicates that by labeling a change of custody "temporary" a trial court can destroy the right of appeal from an order that is in fact final in nature.

There appears to be a remarkable lack of precedent concerning the efficacy of "temporary" custody orders in final orders and decrees. We note, however, that in

---

[1] The trial court file we have commences with the motion made in February 1975, seeking a change of custody. None of the preceding legal events are evidenced by documents in the transmitted record. It is not apparent why we have not been furnished the record required by ORS 19.074:

"*In every case, the trial court file shall be transmitted * * * *"* (Emphasis supplied.)

With this incomplete record before us, there is some question whether we should even consider this appeal. Rea v. Rea, 195 Or 252, 245 P2d 884, 35 ALR2d 612 (1952). As an example of the problems this causes, we have taken the ages of the children from the information we have in the briefs and abstract. Their birth dates undoubtedly are shown by the original pleadings and decree, which we do not have.

[2] ORS 107.425(1) provides:

"Whenever a domestic relations suit * * * is filed * * * or motion to modify an existing decree * * * is before the court, the court having jurisdiction may, in cases in which there are minor children involved, cause an investigation to be made as to the character, family relations, past conduct, earning ability and financial worth of the parties to the suit for the purpose of protecting the children's future interest. *The court may defer the entry of a final decree until the court is satisfied that its decree in such suit will properly protect the welfare of such children * * *.*" (Emphasis supplied.)

*McLaughlin v. McLaughlin,* 253 Or 447, 448, 454 P2d 857 (1969), where a final decree gave custody to father but "at the end of one year the mother could request a change of custody upon the basis of her conduct during that period of time * * *," and she apparently unsuccessfully did so, the court neither approved nor disapproved the temporary nature of the original custody provision as it affirmed the lower court. The briefs in that case show that the issue of the court's authority to hear the appeal in spite of the "temporary" custody order was not argued. Of importance here is the fact that the court did entertain the appeal, despite the fact that the custody order there was exactly as "temporary" as the one here.

In *Watson v. Watson,* 213 Or 182, 323 P2d 335 (1958), and *Stonebrink v. Stonebrink,* 2 Or App 328, 468 P2d 546 (1970), the respective courts said that appeals could not be taken from temporary custody orders that were made in the divorce decrees there involved. In *Watson* the court said a responsibility rests upon the trial court to award the custody to some person "within a reasonable time." We think this means "permanent" custody, "within a reasonable time."

In *Stonebrink* we said that in view of the infringement of a "temporary" order on the right of prompt appeal, reservation of decision on custody should be used only in an exceptional case. We do not view the matter at bar as being so exceptional (or even exceptional at all for this type of litigation) as to preclude the right to prompt appeal from the decision of the only matter in controversy. In the light of the authorities reviewed above, we have, therefore, treated the order made as permanent in nature and hence appealable.

Applications for change of custody are governed in part by ORS 107.135(1)(a).[3] The factors to be consi-

[3] ORS 107.135(1)(a) provides:

"(1) The court has the power at any time after a decree * * * to:

"(a) Set aside, alter or modify so much of the decree as may provide for * * * the custody, support and welfare of the minor children * * *."

dered in child custody cases have now been codified. *See* Oregon Laws 1975, ch 722, § 2.[4] The rules that were the bases for the codification, often repeated, are set out in *Tingen v. Tingen,* 251 Or 458, 446 P2d 185 (1968).

The evidence at bar showed that father is a dentist, has remarried, and has a 17-year-old son from a former marriage coming to live with him. His new wife is apparently a competent housewife.

Mother had been a dental hygienist, capable of lucrative employment, but had ceased work and was attending Oregon State University with expectation of graduation in December 1975. She had rented her Corvallis home to two young men, and sometimes stayed overnight at that residence. She had moved the children and herself to her parents' home in Sweet Home, however, and commuted. The children attended school in Sweet Home, were largely cared for by mother's parents, but she did see them almost daily, and gave them care. The investigation, confined to a psychologist's report on his contacts with the boy, then eight years old, stated he had emotional problems stemming from the divorce and lack of parental stability. He was described as needing stability, and the frequent moving of his homes and schools was particularly noted. A

[4] "(1) In determining custody of a minor child * * * the court shall give primary consideration to the best interests and welfare of the child. In determining the best interests and welfare of the child, the court may consider the following relevant factors:

"(a) The emotional ties between the child and other family members;

"(b) The interest of the parties in and attitude toward the child; and

"(c) The desirability of continuing an existing relationship.

"(2) The best interests and welfare of the child in a custody matter shall not be determined by isolating any one of the relevant factors referred to in subsection (1) of this section, or any other relevant factor, and relying on it to the exclusion of other factors.

"(3) No preference in custody shall be given to the mother over the father for the sole reason that she is the mother.

"(4) In determining custody * * * the court shall consider the conduct, marital status, income, social environment or life style of either party only if it is shown that any of these factors are causing or may cause emotional or physical damage to the child." Oregon Laws 1975, ch 722, § 2.

babysitter also testified this is noticeable— particularly that he engages in thumb sucking.

■■ Counsel for mother argues that much of the evidence should not have been received because it was outside the allegations of the affidavit undergirding the motion. Our perusal of the evidence indicates no material abuse in this regard. The trial judge had heard the original contested proceeding, and was obviously hearing little that was new on the one hand or irrelevant on the other. As we have said in note 1, we do not have all of the record that was available to the trial judge, but we recognize that the balance of the record probably had negligible effect on the decision— otherwise we would refuse to review it. *Rea v. Rea,* 195 Or 252, 245 P2d 884, 35 ALR2d 612 (1952). The trial judge said, in making his order, "* * * A weighing and balancing of all the relevant factors indicates that their best interest would be served by their being placed in the custody of the father * * *." The question is close. The trial judge saw and heard the witnesses. On our de novo review of the record we have, we find no competent, compelling evidence to lead us to a different conclusion.

> " 'This court is reluctant to disturb the decree of the trial court as to the custody of children where the case is purely one of fact, and the evidence is sufficient * * *.' " *Stonebrink v. Stonebrink,* supra, 2 Or App at 333-34.

Thus, the facts we have related above we consider to be such a change in circumstances as to justify the order.

■■ As we noted in *Crane v. Crane,* 17 Or App 637, 523 P2d 596 (1974), the "change of circumstances" rule is designed "to avoid constant litigation *and more importantly to provide young children stability of environment* * * *." (Emphasis supplied.) 17 Or App at 639. The disruption caused by a "temporary" change in custody may be no less substantial than that resulting from a "permanent" change and should be avoided even within the "reasonable time" rule of *Watson v. Watson,* supra.

■■ On this appeal we are faced with the fact that the court changed the physical custody from the mother to the father for the school year 1975-76, with what amounts to an invitation to renew the custody battle with new litigation in June 1976. We hold that such an order was not authorized by the wording of ORS 107.425(1) (*see* note 2). That wording allows the court to "defer" entry of a "final decree" until it is satisfied that such "decree * * * will properly protect the welfare of such children * * *." Nothing therein indicates the legislature intended long-term "temporary" orders like that involved at bar. Further, nothing permanent would happen in June 1976 under literal application of the court's order at bar unless one or both of the parties make a further move. The court has a responsibility to make a final order "within a reasonable time." *Watson v. Watson,* supra. The change of circumstances rule pertaining to changes of custody cannot be avoided by making "temporary" orders that run for extended periods of time. We hold that the trial court made a final and permanent order, regardless of the language used therein.

Remanded for entry of a formal order consistent with this opinion.