In the Matter of the Marriage of
SLAUSON, *Respondent—Cross-Appellant,*
*and*
SLAUSON, *Appellant—Cross-Respondent.*
(No. 423-487, CA 6864)
562 P2d 604

Stephen B. Herrell, Portland, argued the cause for appellant—cross-respondent. With him on the brief was McMenamin, Joseph & Herrell, Portland.

Roger L. Meyer, Portland, argued the cause for respondent—cross-appellant. With him on the brief was Newcomb, Sabin, Meyer & Schwartz, Portland.

Before Schwab, Chief Judge, and Thornton and Johnson, Judges.

JOHNSON, J.

Thornton, J., specially concurring opinion.

**JOHNSON, J.**

The husband appeals a dissolution of marriage decree making five assignments of error. One assignment contends that the trial court erred because on August 4, 1976, in response to a petition for reconsideration, it modified its June 30 oral decision announced at the conclusion of the trial. The decree was entered on August 18, 1976. In *State v. Swain/ Goldsmith,* 267 Or 527, 530, 517 P2d 684 (1974), the court stated:

> "* * * A judge may change his mind concerning the proper disposition between the time of a hearing and his final action which takes place when he signs the order disposing of the matter. * * *"

The husband's other assignments challenge the amounts of child and spousal support and the division of property, particularly disposition of the residence. The wife cross-appeals the provisions of the decree relating to the residence. The husband also contends that the following provision relating to spousal support was in error:

> "* * * However, Petitioner may request a review of these provisions for alimony at any time without a necessity of showing a substantial change of circumstances. When there is a change of circumstances, a review may be had by either party at any time. It is anticipated that Petitioner will obtain employment which fact by itself shall not be considered a change in circumstances.

The parties, both in their mid-thirties, were married 16 years and have four children ranging in age from 2 to 15. The husband has had three and one-half years of college education and long experience managing and operating grocery stores and convenience food outlets. For several years the parties owned a chain of convenience markets which they sold in about 1972. In 1974 they acquired another convenience food market which is the principal source of family income. During the marriage the wife worked in the family enterprise and gained considerable knowledge and experience in

the retail grocery trade. She has no other work experience or training. The marriage took place upon her graduation from high school and she has devoted the greater part of her time during the marriage to being a homemaker. She estimates that she can earn a monthly income of $600 but is not now employed.

The marital assets and trial court disposition were as follows:

1. A residence having an assessed value of $44,360 subject to a mortgage of $22,680. The trial court awarded the residence to the wife subject to a $6,500 non-interest bearing lien in favor of the husband to be paid in four years or upon sale, her death or her remarriage, whichever occurs first.

2. Household furniture, which the wife testified as having a value of $3,500 and the husband $14,000, was awarded to the wife.

3. A boat and houseboat moorage which the wife testified is worth $17,400 and the husband $13,300. There is an outstanding indebtedness of approximately $9,300. Both were awarded to the husband.

4. Prior to separation the parties had purchased from the proceeds of the sale of the grocery chain 1,515 shares of U. S. Bancorp stock, each owning half. Both parties had pledged this stock to secure a loan of $22,000, $13,000 of which represented the down payment on the convenience food business and the remainder had been used to pay family expenses. Following separation, by mutual agreement, the husband sold sufficient shares to cover the $13,000 down payment and one-half of the remaining indebtedness. The wife sold shares to cover the other half. As a result the husband was left with 109 shares with a value of $2,725 and the wife with 590 shares with a value of $14,750. The trial court awarded each party his respective shares of stock.

5. The stock in the family convenience store corporation. The corporate property consisted of

equipment, inventory and membership in United Grocers, but no real property. The parties had an option to purchase the real property. The wife contends the stock is worth $40,000 as compared to the husband's evaluation of zero. The corporate balance sheet corroborates the husband's evaluation. However, it is apparent that the parties derived substantial revenues from the corporation, not only in terms of direct payments, but also in terms of corporate automobiles and free food. In addition the parties derived income from such things as pay telephones, tobacco revenues and commercial food coupons. These latter income items were not reflected as income in the corporate books. The court awarded the stock in the corporation to the husband.

6. Following separation but prior to trial the wife purchased the real property on which the convenience store is located for approximately $62,000 subject to a mortgage in that amount. Under the terms of the mortgage the wife was to make a payment of $10,000 on September 1, 1976 and monthly payments of $1,000 thereafter. The wife testified that she intended to make the initial payment by selling her U. S. Bancorp stock. The wisdom of or motive for this transaction is not apparent. The husband objected to the transaction, but did agree to forego his interest in the option. The trial court awarded the property to the wife, but gave the husband an option to buy the property for $67,500, the assessed value, provided the option is exercised by June 30, 1979 and the payment is in cash.

The court also awarded the wife spousal support of $300 per month for three years and child support of $150 per month per child.

At trial there was substantial difference in the estimates made by the parties as to the value of the properties and income with little corroborating evi-

[ 181 ]

dence. Copies of the parties' personal income tax returns were not introduced and probably would not have been helpful since they enjoyed considerable tax free income.

■ The husband contends his disposable income is not more than $1,225 per month. The wife estimates that it is between $1,719 and $1,964. The trial court made no findings, but considering the terms of the decree, it apparently concluded the wife's position was the more believable. We concur that the husband was probably receiving $1,719 to $1,964 from the business, but it is questionable whether the entire amount was real income considering the precarious financial condition of the corporation. The corporate balance sheet shows a net operating loss and a stockholders' equity of $595. On de novo review we give weight to the trial court's findings of fact where observation of witnesses, such as on credibility questions, is important. *McCoy and McCoy,* 28 Or App 919, 562 P2d 207 (decided March 28, 1977). In this case there was a conflict of testimony concerning the amount of money and in-kind goods and services the husband was receiving from the corporation and the trial court's findings are thus entitled to weight on this issue. However, there was no challenge to the credibility of the balance sheet, only its interpretation. The wife argues that the balance sheet understates income because it reflects accumulated depreciation of $8,176. There was no evidence that the charges for depreciation were excessive or that the equipment had not suffered actual depreciation.

■ Both parties gave considerable credence to the testimony of the one expert witness who is the vice president of an investment company which purchases and sells grocery businesses. He testified that the value of such businesses is almost exclusively determined by the value of the equipment, fixtures and inventory. The profitability of such enterprises is dependent upon the effort and business acumen of the

owner-manager. The inventory and equipment of this particular business was wholly encumbered by liabilities. The unmistakable conclusion is that the financial condition of the business is precarious and the parties were taking more money out of it than it was earning. We disagree with the trial court's assignment of an unspecified value to the business. The business had little or no value.

It is apparent that both parties will have to make some adjustment in their standard of living. This need for an adjustment focuses attention on a more fundamental defect in the decree. In fashioning dissolution decrees, the first objective is to make adequate provision for the support of the children. The second objective is to dissolve the marriage and place the parties in a position so that they can begin anew. To attain the latter the court should seek a high degree of finality so that the parties can plan their future with some certainty and are not encouraged to repeatedly march to the courthouse. It is for these reasons that it has been consistently held that the decree cannot be modified unless the moving party can show a change of circumstance. The provision in this decree permitting the wife at any time to request a change merely serves to encourage her to postpone the judgment day when she must get a job. It is well established that in order to modify a support decree, there must be a change of circumstance and the provision in this decree to the contrary is without legal authority. *E.g., Baker and Baker,* 22 Or App 555, 540 P2d 388 (1975). *See also Watson v. Watson,* 251 Or 65, 444 P2d 476 (1968); *Hurner v. Hurner,* 179 Or 349, 170 P2d 720 (1946); *Harder v. Harder,* 26 Or App 337, 552 P2d 852 (1976); *Gwinner and Gwinner,* 24 Or App 743, 547 P2d 151, Sup Ct *review denied* (1976). The record reveals that despite the wife's limited education, she is knowledgeable, intelligent and capable of attaining remunerative employment.

Similarly in dividing the property the dissolution decree should seek to disentangle the parties' financial

affairs and make them free from each other's interference. The friction resulting from the unsuccessful marriage partnership almost inevitably makes continued business association untenable. *See Pence and Pence,* 25 Or App 667, 550 P2d 754 (1976); *Adams and Adams,* 22 Or App 287, 538 P2d 954 (1975). While it is common in marriages of this long duration to attempt an equal division of property, there is "no hard and fast formula." *Demke and Demke,* 23 Or App 403, 405, 542 P2d 493 (1975). Property division and spousal support should be considered together in attempting to put the two parties in a position so that they may leave the marriage in a self-sufficient status. The trial court in this case ignored these principles. The residence was awarded to the wife subject to the obligation to pay the husband $6,500. In turn, the wife is allowed to continue as the landlord for the husband's business. The husband is given the option to purchase the property at a price which would give the wife a quick profit of $5,500 at the husband's expense. She intended to purchase the property by the sale of the U. S. Bancorp stock which should properly be regarded as a part of the marital estate. She should not be allowed to profit under these circumstances.

The decree of the lower court is modified as follows:

a. Spousal support is reduced to $200 per month commencing July 1, 1977. The provisions permitting modification of spousal support without a change of circumstances are deleted.

b. The residence is awarded to the wife subject to the mortgage, but the obligation to pay the husband $6,500 is deleted.

c. The provisions providing that the husband may purchase from the wife the real property on which his business is located for $67,500 in cash are amended to provide that he may purchase the property from the wife on the same terms and conditions that she acquired the property provided

the husband also assumes the mortgage and reimburses the wife for any payments made to date.

d. The 699 shares of U. S. Bancorp stock owned by the parties shall be divided equally. If any of the stock has been sold, then the proceeds shall be so divided.

Affirmed as modified. No costs to either party.

**THORNTON, J.,** specially concurring.

While I concur in the result reached by the majority, I do not concur in that portion of the opinion which invalidates the proviso in the trial court's decree authorizing the wife to request a review of the provision regarding spousal support "at any time without a necessity of showing a substantial change of circumstances."

At the outset it should be pointed out that the decree provided for monthly spousal support *for a three-year period only.*

It is my view that the trial judge did have authority to make this provision a part of the decree under the terms of its equitable powers. First, I can find nothing in our domestic relations code which prohibits a trial court, in the exercise of its sound judicial discretion, from inserting the above provision in its decree, where the circumstances justify doing so. Second, it seems to me that as a practical matter this flexibility is necessary in order to permit the court to perform its proper function in domestic relations cases. *See, e.g., Remington v. Remington,* 29 Or App 135, 562 P2d 586 (1977), where this court allowed to stand a circuit court order providing for a visitation arrangement which was to be reexamined by the court at the end of six months.

In *Gwinner and Gwinner,* 24 Or App 743, 547 P2d 151, Sup Ct *review denied* (1976), cited by the majority, this court had occasion to consider a similar question. There the parties were contesting the right

to custody of their two minor children who were in the mother's custody pursuant to the decree dissolving the marriage. Three years later the father moved for a change in custody. Following a hearing on the merits the circuit court entered an order providing for a "temporary" change of custody to the father for a period of 10 months. The mother appealed to this court. The father moved to dismiss the appeal on the ground that no appeal would lie from a temporary order.

This court held that the circuit court's order would be treated as permanent in nature and hence appealable. Further we said, obiter, that the "change of circumstances" rule pertaining to modification of custody provisions of a decree cannot be avoided by entry of a "temporary" order that runs for an extended period of time.

I do not read ORS 107.135 or *Gwinner* and the authorities cited therein as forbidding the trial judge in a domestic relations matter from expressly reserving power to modify unto itself by inserting the above provision in its decree. Rather, *Gwinner* should stand only for the proposition that such a proviso cannot prevent the losing party from taking an immediate appeal from that decree.

The general rule is stated in 24 Am Jur2d 784 et seq, Divorce and Separation § 667 (1966), as follows:

> "The propriety of inserting a provision in a decree of alimony reserving the power of modification in anticipation of a possible change in the financial circumstances of the parties, although not specifically passed upon, has been recognized in a number of cases. Indeed, some of the earlier cases state that a decree awarding alimony should always contain a provision reserving the right subsequently to modify the allowance, as to future payments, on the application of either party, according to their subsequent varying circumstances, and that if the trial court should fail so to provide in the award, such failure may be remedied on appeal. On the other hand, a provision in a decree serving jurisdiction to modify it is

superfluous where a statute retains the cause in court whenever the decree provides for the support and maintenance of the wife and children."

The "change of circumstances" rule is a salutary one. It is presumably based upon the doctrine of res judicata and is firmly fixed in our domestic relations jurisprudence. There is not, however, any such requirement in our statutes. I do not believe we should expand this rule to prohibit courts of domestic relations from exercising their judicial discretion as was done here and in *Remington v. Remington, supra. See* for examples, *McLaughlin v. McLaughlin,* 253 Or 447, 454 P2d 857 (1969), and *Kent and Kent,* 28 Or App 107, 558 P2d 1262, Sup Ct *review denied* (1977). This to me is an unwarranted curtailment of the trial court's necessary and proper discretion.