Argued March 6, modified and remanded June 26, 1979

In the Matter of the Marriage of
DEFFENBAUGH, *Petitioner,*
*and*
DEFFENBAUGH, *Respondent.*
(No. 49557, CA 10300, SC 25804)
596 P2d 966

D. Erik Larson, Salem, argued the cause for petitioner. With him on the briefs was Brand, Lee, Ferris & Embick, Salem.

Earl McFarlan, Sweet Home, argued the cause and filed a brief for respondent.

HOLMAN, J.

## HOLMAN, J.

This case involves a dispute between a former husband and wife over the custody of their two small children following the dissolution of the parents' marriage. It comes before us on the wife's petition for review of the Court of Appeals' decision, 35 Or App 683, 582 P2d 470 (1978). In order to understand fully the issues presented by this case it is necessary to examine in detail its involved procedural background.

Wife filed a petition for dissolution of marriage April 1, 1977, and requested custody of the parties' two minor children, a girl, born June 6, 1974, and a boy, born May 19, 1976. In his response, husband also sought custody. On May 13, 1977, after a show cause hearing, the court awarded temporary custody of the children to the husband pending trial on the petition. Trial took place on September 23, 1977.

Testimony disclosed that wife had left the family home prior to filing the petition and that she sometime later began living with a man with whom she had become involved prior to her departure. After the time of trial she was working parttime at a clothing store in exchange for clothing and was not available to care for the children during those hours. If awarded their custody, she would have had to hire a baby-sitter to care for them while she was away. She expressed an intent to marry the man she was living with as soon as it became possible as well as a willingness afterward to leave her job and to devote herself to caring for the children full time. She had taken good care of the children in the past and appeared to have had a good relationship with them.

Husband had a full-time job in a sawmill but faced a layoff at the time of trial. He was living with the children in a trailer, formerly occupied by the entire family, which was located on property owned by his parents. His mother and father lived nearby in a

[761]

rather dilapidated, older home which they had constructed. While husband was at work, primary responsibility for the children's care fell on husband's mother, who was approximately 70 years old and suffered from arthritis and a leg ulcer. Poor health had the potential of interfering with her ability to care for the children. However good her intentions, she appears to have been something less than a model housekeeper.

Husband's past conduct, like wife's, suggested certain character deficiencies. There was testimony that he had verbally abused his aging mother and had physically abused his wife. He, like his wife, had been unfaithful during marriage. He appears to have thrown regular parties at the trailer where alcohol was served to minors.

With this evidence in mind, the trial court said, in part, concerning the child custody issue:

> "What I am getting at is that his plan, right now, for the present, is the better, but if she does get married and does stay home and take care of the children like she intends to do, but can't do for another 60 days at least, then her plan would be better. And all I know how to do to handle that situation is take the matter of custody under advisement for the next 60 days, or thereabouts and see what develops, but in the meantime, I think that he should continue with the custody.
>
> "If she gets married and quits work and stays at home with the children, I think she ought to have them, and hers would be a better plan.
> "* * * * *.
>
> "So, I will ask counsel to report to the Court and I hope it wouldn't be necessary for you to come back, report to the Court by December 15th and I will hold the matter of custody, and, of course, in that regard it would depend on child support, open until December 15th to get a report on what the situation is at that time.
> "* * * * *.

"THE COURT: Well, the Order would be then, there should be a dissolution as of now, the effective date would be November the 23rd.[1] I will give him presently the custody of these children subject to her right of reasonable visitation, but I want it clearly understood that the Court would consider changing the custody if she is remarried and she wouldn't have to show any other change of circumstances.

"MR. MC FARLAN: Well, would she have to file a motion for a change?

"THE COURT: No. I said I would take it under advisement and keep that part of it open until then and then I want a report and you can reply to the report. I think that would be the best way to do it. I will make a final ruling on December the 15th on the matter of custody."

Wife's counsel was instructed by the court to draft a decree, but he experienced difficulty with the wording. Husband's counsel was then instructed by the court to draft a decree, which he did. It said nothing about the award of permanent custody being postponed until wife had had an opportunity to remarry but instead awarded custody to father. No one noticed the error at the time.

On December 13 wife filed a motion to modify the decree and to award custody of the children to her. In an accompanying affidavit she stated that she had married the man she had been living with. The court issued an order to husband, asking him to show cause why the decree should not be modified. The court originally set December 21, 1977, as the date of the hearing on the show cause order but later rescheduled it for January 6, 1978.

At the January 6, 1978, hearing on wife's motion to modify the decree, the parties and the court engaged in a lengthy discussion regarding, among other issues, the procedural status of the case and the court's authority to change custody. The court ultimately asked the wife to file a motion requesting modification

---

[1] The date after which remarriage was legally permissible.

of the decree to reflect the original terms of its oral decision, which she did. The court did not hold an evidentiary hearing on this motion. It then signed two orders: the first corrected the original decree by deleting the language awarding custody to father and by inserting the following paragraph:

"The issue of the award of custody of * * * [the] minor children of the parties hereto, hereby is taken under advisement until 15 December 1977, to determine whether or not petitioner [wife] shall remarry during such interim period."

The second order recited that wife had remarried and that custody of the two children was awarded to her. The court signed both orders without first submitting them to husband's counsel.

Husband appealed to the Court of Appeals. He there contended that the trial court erred by failing to hold a hearing to determine if there had been a substantial change of circumstances after the award of custody to husband to justify a change of custody. He asked the Court of Appeals to reverse the orders modifying the decree and awarding custody of the children to wife because they had the effect of modifying an award of custody without the required showing of changed circumstances. The Court of Appeals agreed and reversed the order awarding custody of the children to wife. It remanded the case to the trial court for a hearing on the wife's motion to modify the decree under the changed circumstances standard.

In this court, wife challenges the Court of Appeals' decision on a variety of grounds. She asserts that it erred by relying on its prior decisions which impose restrictions on the use of temporary custody awards. She argues that it also erred when it concluded that the circumstances of this case did not permit the use of a temporary custody decree at the time of dissolution of the marriage. She contends that if we hold that a hearing was required, we should substitute a standard which focuses on the best interests of the child at the

time of the hearing for a standard which requires her to show changed circumstances following the previous award.

■ In *Greisamer and Greisamer,* 276 Or 397, 400, 555 P2d 28, *on remand* 27 Or App 521, 556 P2d 992 (1976), this court explained the "change of circumstances" rule in the following way:

> "* * * [T]he original decree awarding custody to one of the contesting parents will not be disturbed unless the plaintiff seeking a change in custody adduces evidence showing (1) that subsequent to the original decree events relevant to the capacity of the plaintiff or the custodial parent to properly take care of the child have changed, and (2) that considering the change in circumstances in the context of all relevant evidence it would be for the best interests of the child to change the custody from the custodial parent to the other."

If an award is permanent, the change of circumstances rule applies when someone seeks a change of custody. If an award is temporary, and validly so, the rule does not apply. Husband evoked the rule in the Court of Appeals when he contended that the trial court erred by failing to hold a hearing to determine whether the circumstances had changed sufficiently since the original decree to justify a change of custody to wife. The Court of Appeals rightly observed that

> "* * * [r]esolution of this issue requires a determination of whether the initial award of custody to the husband was permanent or temporary." 35 Or App at 687.

The Court of Appeals began its analysis by seeking to determine whether and when a trial court could make a temporary award of custody while delaying a permanent award to some later date. The court said:

> "In *Watson v. Watson,* 213 Or 182, 323 P2d 335 (1958), the Supreme Court did not approve or disapprove of temporary custody orders, but stated:

"'* * * [T]hat an obligation rests upon a court of divorce to, within a reasonable time, award the custody of the child to some person, usually one of the parents. * * *' 213 Or at 184.

In *Stonebrink v. Stonebrink,* 2 Or App 328, 468 P2d 546 (1970), we concluded, under *Watson,* a court could reserve the question of permanent custody to a later date. We, however, stated reservation of a decision on custody should be used only in exceptional cases where the best interest of the child requires it and should be for the shortest practicable period." 35 Or App at 687.

The Court of Appeals also cited *Gwinner and Gwinner,* 24 Or App 743, 547 P2d 151, *rev den* (1976), where it held that absent "exceptional circumstances" it would treat a "temporary custody order" as permanent for purposes of appeal. It then applied the "exceptional circumstances" rule to the facts of this case. The court stated:

"We find no exceptional circumstances that justified withholding of the permanent custody decision. The event that the court felt would change the living environment provided by the mother was a future event solely within her control. Marriage is a matter for individual choice and is not a condition for having custody of children. Although it may add to the stablity of a living environment, it cannot be the sole basis or condition for awarding or changing custody. *See Niedert and Niedert,* 28 Or App 309, 559 P2d 515, *rev den* (1977). A decree which imposes such a condition, directly or by implication, is contrary to statute, ORS 107.137(4), and public policy." (Footnote omitted.) 35 Or App at 688.

Having concluded that the trial court should have made a permanent custody disposition at the time of trial, the Court of Appeals noted that in *Stonebrink v. Stonebrink,* 2 Or App 328, 468 P2d 546 (1970), it had expressed concern that the effect of a temporary order was to deny the parties prompt right of appeal and that in *Gwinner* it had treated a temporary custody order as permanent for purposes of appeal where no

exceptional circumstances existed. After quoting language from *Gwinner* that "[t]he change of circumstances rule pertaining to changes of custody cannot be avoided by making 'temporary' orders that run for extended periods of time," it went on to say:

> "From a reading of these cases we conclude, absent exceptional circumstances respecting the best interests of the children, an award of custody will be considered permanent for the purposes of appeal *and application of the change of circumstances rule.* This is required not only to accord the parties prompt right of appeal, but also to lend stability to the parent-child relationship following dissolution. The very nature of a temporary custody order is inconsistent with attaining the desired stability of this relationship." 35 Or App at 688. (Emphasis added.)

The Court of Appeals accordingly held the original award of custody to husband at the time of trial to be permanent rather than temporary and the award of permanent custody to wife to be invalid since no hearing had been held to show that a change of circumstances had occurred. It remanded wife's petition to the trial court for such a hearing.

Oregon's domestic relations statutes do not provide a ready answer to the question of whether a trial court may make a temporary award of custody at the time of dissolution of the marriage. ORS 107.095 permits a court to make a temporary award of custody during the period between the commencement of a dissolution suit and the entry of a dissolution decree. With respect to the terms of a custody award following dissolution ORS 107.105(1) merely states:

> "* * * Whenever the court grants a decree of * * * dissolution of marriage * * * it has power further to decree * * *
>
> "(a) For the future care and custody of the minor children of the marriage by one party or jointly and for the visitation rights of the parents or parents not having custody of such children as it may deem just and proper."

Prior cases have addressed the temporary custody award issue. In *Watson v. Watson,* 213 Or 182, 323 P2d 335 (1958), the trial court entered a decree which placed a minor child under the supervision and control of the juvenile court awaiting its further order following a contested divorce trial. Plaintiff appealed, contending that then ORS 107.100 required the trial court to grant the custody of the child to one of the parties, or to some person. ORS 107.100 bore a close resemblance to what is now ORS 107.105(1), reading as follows:

"(1) Whenever a marriage is declared * * * dissolved, the Court has power further to decree as follows:

"a. For the future care and custody of the minor children of the marriage, as it may deem just and proper * * *."

*Watson* implicitly held that the statute permitted a trial court to hold an order regarding the permanent custody of the child in temporary abeyance following entry of the decree of dissolution. *Id.* at 184. We indicated some limitations on that power when we stated that the court had an obligation to, "within a reasonable time, award the custody of the child to some person, usually one of the parents." *Ibid.* We also suggested that we would scrutinize the trial court's motives for taking this action in determining whether the award was proper:

"From the record, we are convinced the trial court was not attempting to avoid the making of a decision relative to the custody of the child or attempting to shift its responsibility as a court of divorce to a court having jurisdiction of juvenile matters. The conscientious trial judge undoubtedly felt the father of the child was neither a proper person to have the custody of the child nor was he desirous of having such custody, and, likewise, there was serious doubt in the court's mind as to the mother's ability to properly face the responsibility of motherhood. * * *." *Id.*

[768]

We concluded that because the order was permissibly temporary, it was not appealable as a final order. However, since sufficent time had elapsed for a final adjudication relative to the custody of the child, we remanded to the trial court for entry of a final decree upon this phase of the case.

■ There is nothing in ORS 107.105(1) to suggest that we should reach a different result under the new statute. A temporary custody award to a parent is every bit as appropriate as a temporary award to an institution. Temporary custody awards following dissolution are within a trial court's powers and may be granted in proper situations.

In *Watson* we indicated that a trial court must make a permanent award of custody within a "reasonable time" and suggested that the court should make a temporary award only when it served the best interests of the child and not when it was for the sake of judicial convenience. The Court of Appeals points to its decisions in *Stonebrink* and *Gwinner* as adding the requirement that exceptional circumstances exist. The court felt that this requirement diluted trial court authority to make temporary awards, a result it perceived as desirable since temporary custody awards were inconsistent with judicial efforts to attain stability in the parent-child relationship following dissolution. Wife challenges the Court of Appeals' reliance on the exceptional circumstances requirement as stated in *Stonebrink* and *Gwinner.*

■ We do not believe that the exceptional circumstances requirement does anything other than make explicit what was already implicit in *Watson.* In that case we noted an unusual situation which justified the trial court's decision to withhold custody from either parent temporarily. We agree with the Court of Appeals that a trial court should not make a temporary custody award unless exceptional circumstances exist. ORS 107.137, which provides guidelines for child custody determinations, clearly acknowledges

[769]

the importance of stable relationships.[2] Temporary custody awards do little to advance that interest. Consequently, they should be used only in exceptional circumstances where the best interests of the child require this course of action.

■ While the trial court's action was understandable, we do not believe this case presented the type of exceptional circumstances which would justify use of the temporary custody device. We are reluctant to permit a trial court to condition a permanent custody award on remarriage. Such a condition may coerce a parent into premature remarriage. Consequently, we agree with the Court of Appeals that no exceptional circumstances existed here which would justify the trial court's temporarily delaying a permanent award of custody.

■ While we agree with the Court of Appeals' conclusion that the trial court misused the delayed permanent custody award mechanism in this case, we reject their holding that this makes permanent an award of custody that was intended by the trial court to be

---

[2] "ORS 107.137. Factors considered in determining custody of minor child. (1) In determining custody of a minor child pursuant to ORS 107.105 or 107.135, the court shall give primary consideration to the best interests and welfare of the child. In determining the best interests and welfare of the child, the court may consider the following relevant factors:

"(a) The emotional ties between the child and other family members;

"(b) The interest of the parties in and attitude toward the child; and

"(c) The desirability of continuing an existing relationship.

"(2) The best interests and welfare of the child in a custody matter shall not be determined by isolating any one of the relevant factors referred to in subsection (1) of this section, or any other relevant factor, and relying on it to the exclusion of other factors.

"(3) No preference in custody shall be given to the mother over the father for the sole reason that she is the mother.

"(4) In determining custody of a minor child pursuant to ORS 107.105 or 107.135, the court shall consider the conduct, marital status, income, social environment or life style of either party only if it is shown that any of these factors are causing or may cause emotional or physical damage to the child."

temporary. The Court of Appeals reached this conclusion on the basis of its reading of *Gwinner* and *Stonebrink, supra.* Those cases had come before the court in a different posture and had involved distinguishable issues.

In *Stonebrink* a father filed suit for divorce and asked that the mother receive custody. The court granted the divorce and awarded the mother temporary custody of the children, ordered an investigation by the county juvenile department, and reserved the question of permanent custody to a later date. Following the investigation, the father sought permanent custody, alleging completion of the investigation, his own remarriage, and the desire of the children. The court conducted a hearing and, at its conclusion, entered an order granting custody of two boys to the mother while reserving for further hearing determination of the custody of the daughter. Father appealed from that part of the order granting custody of the two boys to the mother. Subsequently, the trial court also awarded custody of the daughter to the mother. Father then appealed from that order as well.

The Court of Appeals noted that approximately nine months had elapsed between the divorce decree and the custody award of the two boys and ten months in the case of the daughter. It examined the record carefully to determine whether this was a "reasonable time" in accordance with *Watson* and concluded that under the circumstances of the case it was. The court went on to discuss the effect temporary custody awards have on the appeal rights of the non-custodial party, and noted,

> "The law is settled that an order of temporary custody is not appealable, since it is not a final order. *Watson v. Watson* [213 Or 182, 323 P2d 335 (1958)]. Thus the effect of postponing an award of custody at the time of the granting of the divorce decree has the effect of denying to either party the right to appeal so far as the matter of custody is concerned, and the

[771]

trial court is left free to make such award of temporary custody as it deems appropriate. The effect of the latter order then is to deprive each party, during its continuance, of the right of appeal concerning custody, and, as here, to require an independent appeal not only on that issue but, again as here, even as to one or more of the children.

"We are of the opinion that in view of its obvious infringement upon the right of a prompt appeal, reservation of a decision on custody, ancillary as it is to the divorce, should be used only in exceptional cases where the best interests of the child clearly require it, and should be limited to the shortest practicable period." 2 Or App at 333.

The court expressed reluctance to overturn the findings of a trial court in a custody proceeding and, on the basis of its own examination of the evidence, affirmed.

In *Gwinner* a dissolution decree entered in May 1972 awarded the wife custody of two children. In May 1975 father moved for a change of custody to himself. The court ordered an investigation pursuant to statute and, on August 7, 1975, awarded father "temporary" custody to continue until June 10, 1976. The court stated that at that time, at the request of either party, the matter would be set for "determination of permanent custody." Mother appealed, and father moved to dismiss the appeal because the order was for temporary custody.

The Court of Appeals denied the motion. The court was unwilling to permit a trial court to destroy, by labeling a change of custody "temporary," the right to appeal from an order that was in fact final in nature. By its very terms the decree of custody was permanent unless one of the parties instigated a change. The Court of Appeals therefore treated the order as permanent in nature and hence appealable. On *de novo* review of the record, the court concluded that the evidence showed there had been such a change of circumstances between the time of the original decree

awarding custody to the mother and the time custody was awarded to the father to justify a change of custody. The court chastised the trial court for failing to make a final order within a reasonable time. It observed:

> "* * * The change of circumstances rule pertaining to changes of custody cannot be avoided by making 'temporary' orders that run for extended periods of time. We hold that the trial court made a final and permanent order, regardless of the language used therein." 24 Or App at 749.

The court therefore remanded for entry of a formal order awarding custody to the father.

*Stonebrink* and *Gwinner* held that a court would treat an improper temporary award as permanent for purposes of applying the final order rule when the non-custodial party sought to appeal. The court in *Gwinner* treated as permanent a grant of custody for ten months which was not to be changed unless one of the parties so applied at the end of that time. The present case does not involve the right to appeal either from a temporary order, or from a purported temporary order of a long period of time which, even then, was open-ended unless someone raised the issue.

It is evident from the transcript that the trial court in the present case never intended the award to husband to be permanent. It had the right subsequently to conform its decree at the time of dissolution to its intention. The delay in its decision on final custody, albeit relatively short, was for an improper purpose, *i.e.,* wife's subsequent remarriage at the end of the 60-day waiting period. We can only guess what the court would have done at the time of the dissolution trial had it realized that the award to husband would be treated as permanent, not temporary. The Court of Appeals treated the award to husband as permanent and remanded for a hearing on wife's motion for custody. Thus, a showing of change of circumstance was required. By its remand, the Court of Appeals

froze the temporary award to husband into an unintended permanency. This disposition of the case cannot be permitted to stand because to do so would be to deprive wife of ever having an equal chance at a trial court award of permanent custody. The trial court never decided the issue of permanent custody, and under the terms of the Court of Appeals' remand, would be required to do so in the first instance with wife laboring under the disability of having to show a change of circumstance since the trial of the case.

In a child custody dispute our paramount consideration must be the best interests of the child. In *Crowell v. Crowell,* 184 Or 467, 471-472, 198 P2d 992 (1948), we observed that

"[w]hen a court has the grave responsibility of determining the custody of a child, its welfare is the guiding star. Neither technicalities nor strict rules of law have any place in such proceeding."

We are dealing here not with a property interest but with two small children whose needs change rather than remain static over time. We are unwilling to have the terms of the custody decree based on a record which is now approximately a year and a half old. Therefore, we remand the case to the trial court for a new custody hearing. At such hearing the trial court will make its determination based on the children's current best interests under the guidelines set forth in ORS 107.137, taking into consideration not only the presently existing record but also any evidence of relevant circumstances occurring since the dissolution and without either party being required to show a change of circumstances as a prerequisite to custody.